## UNITED STATES *v.* NORTH CAROLINA.

### ORIGINAL.

No. 3. Original. Argued April 2, 1890. — Decided May 19, 1890.

A State is not liable to pay interest on its debts, unless its consent to do so has been manifested by an act of its legislature, or by a lawful contract of its executive officers.

On bonds of the State of North Carolina, expressed to be redeemable on a day certain at a bank in the city of New York, with interest at the rate of six per cent a year, payable half-yearly "from the date of this bond and until the principal be paid, on surrendering the proper coupons hereto annexed;" and issued by the Governor and Treasurer of the State under the statute of December 22, 1852, c. 10, which provides that the principal of such bonds shall be made payable on a day named therein, that coupons of interest shall be attached thereto, and that both bonds and coupons shall be made payable at some bank or place in the city of New York, or at the public treasury in the capital of the State, and makes no mention of interest after the date at which the principal is payable; the State is not liable to pay interest after that date.

THIS was an action of debt, brought in this court, on November 5, 1889, by the United States against the State of North Carolina, upon one hundred and forty-seven bonds under the seal of the State, signed by the Governor, and countersigned by the Public Treasurer, for one thousand dollars each, payable in thirty years from date, with interest at the yearly rate of six per cent, alleged in the declaration to be payable half-yearly until payment of the principal; nineteen of the bonds, dated January 1, 1854, and payable January 1, 1884, and seven bonds dated January 1, 1855, and payable January 1, 1885, issued under the statutes of North Carolina of January 27, 1849, and December 22 and 27, 1852; and the remaining one hundred and twenty-one bonds, dated April 1, 1855, and payable April 1, 1885, issued under the statute of North Carolina of February 14, 1855; and all these bonds, differing only in date of execution and in day of payment, being in the following form:

"It is hereby certified that the State of North Carolina justly owes to the North Carolina Railroad Company or bearer one thousand dollars, redeemable in good and lawful money of the United States at the Bank of the Republic, in the city of New York, on the first day of January, 1884, with interest thereon at the rate of six per cent per annum, payable half-yearly at the said bank on the first days of January and July of each year, from the date of this bond and until the principal be paid, on surrendering the proper coupons hereto annexed.

"In witness whereof the Governor of the said State, in virtue of the power conferred by law, hath signed this bond and caused the great seal of the State to be hereto affixed, and her Public Treasurer hath countersigned the same, this first day of January, 1854."

The material provisions of the statutes under which the bonds were issued are copied in the margin.[1]

---

[1] The act of January 27, 1849, c. 82, entitled "An act to incorporate the North Carolina Railroad Company," contains the following provisions:

"SEC. 36. That whenever it shall appear to the Board of Internal Im-

The declaration alleged that, at the dates when the bonds became payable, payment of the principal was demanded by

provements of this State, by a certificate, under the seal of said company, signed by their treasurer and countersigned by their president, that one-third have been subscribed for and taken, and that at least five hundred thousand dollars of said stock has been actually paid into the hands of said treasurer of said company, the said Board of Internal Improvements shall be and they are hereby authorized and required to subscribe, on behalf of the State, for stock in said company to the amount of two millions of dollars to the capital stock of said company; and the subscription shall be paid in the following manner, to wit, the one-fourth part as soon as the said company shall commence work, and one-fourth thereof every six months thereafter, until the whole subscription in behalf of the State shall be paid: Provided, the treasurer and president of said company shall, before they receive the aforesaid instalments, satisfactorily assure the Board of Internal Improvements, by their certificates, under the seal of said company, that an amount of the private subscription has been paid in equal proportion to the stock subscribed by the State.

" SEC. 37. That if in case the present legislature shall not provide the necessary and ample means to pay the aforesaid instalments on the stock subscribed for on behalf of the State, as provided for in the thirty-sixth section of this act, and in that event, the Board of Internal Improvements aforesaid shall, and they are hereby authorized and empowered to borrow, on the credit of the State, not exceeding two millions of dollars, as the same may be needed by the requirements of this act.

" SEC. 38. That if in case it shall become necessary to borrow the money by this act authorized, the Public Treasurer shall issue the necessary certificates, signed by himself and countersigned by the Comptroller, in sums not less than one thousand dollars each, pledging the State for the payment of the sum therein mentioned, with interest thereon at the rate of interest not exceeding six per cent per annum, payable semi-annually at such times and places as the Treasurer may appoint, the principal of which certificates shall be redeemable at the end of thirty years from the time the same are issued; but no greater amount of such certificates shall be issued at any one time than may be sufficient to meet the instalment required to be paid by the State at that time.

" SEC. 39. That the Comptroller shall register the said certificates at large in a book to be by him kept for that purpose, at the time he countersigns the same."

" SEC. 41. That, as security for the redemption of said certificates of debt, the public faith of the State of North Carolina is hereby pledged to the holders thereof; and, in addition thereto, all the stock held by the State in the North Carolina Railroad Company hereby created shall be, and the same is hereby, pledged for that purpose; and any dividends of profits which may, from time to time, be declared on the stock held by the State

the United States and refused by the State of North Carolina. The State of North Carolina pleaded payment of the prin-

as aforesaid, shall be applied to the payment of the interest accruing on said certificates; but until such dividends of profit may be declared, it shall be the duty of the Treasurer, and he is hereby authorized and directed to pay all such interest, as the same may accrue, out of any moneys in the Treasury not otherwise appropriated.

"SEC. 42. That the certificates of debt, hereby authorized to be issued, shall be transferable by the holders thereof, their agents or attorneys, properly constituted, in a book to be kept by the Public Treasurer for that purpose; and in every instance, where a transfer is made, the outstanding certificate shall be surrendered and given up to the Public Treasurer, and by him cancelled, and a new one, for the same amount, issued in its place to the person to whom the same is transferred." Laws of North Carolina of 1848–49, pp. 153, 154, 155.

The act of December 22, 1852, c. 10, entitled "An act to regulate the form of bonds issued by the State," contains the following provisions:

"SEC. 1. That all certificates hereafter to be issued for any money to be borrowed for the State, by virtue of any act now in force authorizing the same, or of any act which may be hereafter passed for that purpose, shall be signed by the Governor and countersigned by the Public Treasurer, and sealed with the great seal of the State, and shall be made payable to ——— or bearer; and the principal shall be made payable by the State at a day named in the certificate or bond; and coupons of interest in such form as may be prescribed by the Public Treasurer, and to be attached to the certificate, and the certificates and coupons attached thereto shall be made payable at such bank or place in the city of New York as he, the Public Treasurer, may think proper, or at the office of the Public Treasury at Raleigh, if preferred by the purchaser; Provided, however, that no such certificate shall be issued for a less sum than one thousand dollars, and no certificate shall be sold for a less sum than par value.

"SEC. 2. That it shall be the duty of the Public Treasurer to enter in a book, to be kept for that purpose, a memorandum of each bond or certificate, issued by virtue of this act, the numbers, date of issue, when and where payable, to whom issued, or to whom sold, and at what premium, if any, the same was sold by him." Laws of North Carolina of 1852, pp. 45, 46.

By the act of December 27, 1852, c. 9, entitled "An act to increase the revenue of the State by the sale of its bonds," "it shall be the duty of the Public Treasurer to have coupons attached to all the bonds of the State hereafter sold by him." Laws of North Carolina of 1852, p. 45.

The act of February 14, 1855, c. 32, entitled "An act for the completion of the North Carolina Railroad," contains the following:

"SEC. 1. That the Public Treasurer is authorized and instructed to subscribe, in behalf of the State, for ten thousand additional shares of capital

cipal sums of the bonds after they became payable, together with all interest accrued thereon to the days when they became payable.

The United States moved for judgment, as by *nil dicit,* because the plea did not answer so much of their demand as was for interest after the bonds became payable.

The case was submitted to the decision of the court upon a case stated, signed by the Attorney General of the United States, and by the Attorney General of North Carolina, as follows:

" The parties to the above-entitled case stipulate that upon the issue joined the facts are that payment of the bonds was demanded and refused at the several times in the years 1884 and 1885 in the declaration alleged; but subsequently, upon or about the 2d day of October, 1889, all coupons upon the bonds were paid, and that, besides, $147,000 was paid upon account of whatever might then remain due upon the bonds; the United States then contending that because of interest at six per cent per annum, which at that time had accrued upon the principal of the bonds since their maturity, such payment left still unpaid upon the debt the sum of $41,280; whilst the State then contended that no interest had accrued upon the principal of the bonds after their maturity, and therefore that such payment was in full of such debt.

" The parties submit to the court that, in case as matter of law the principal of said bonds did so bear interest after maturity, judgment is to be entered for the plaintiff for $41,280; but that if it did not so bear interest, judgment is to be entered for the defendant."

---

stock in the North Carolina Railroad Company, and that he make payment for said stock, by issuing and making sale of the bonds of the State, under the same provisions, regulations and restrictions prescribed for the sale of the bonds heretofore issued and sold to pay the State's original subscription in the stock of said company; and the same pledges and securities are hereby given for the faithful payment and redemption of the certificates of debt now authorized that were given for those issued under the direction of said act: Provided, nevertheless, that the whole amount of principal money of such bonds or certificates of debt shall not exceed the sum of one million of dollars."　Laws of North Carolina of 1854–55, p. 64.

*Mr. Attorney General* (with whom was *Mr. S. F. Phillips, Mr. J. G. Zachry* and *Mr. F. D. McKenney* on the brief) for plaintiff.

*Mr. T. F. Davidson*, Attorney General of the State of North Carolina, and *Mr. S. G. Ryan* for defendant.

Mr. Justice Gray, after stating the case as above, delivered the opinion of the court.

This is an action brought in this court by the United States against the State of North Carolina upon bonds issued by the State and held by the United States. By the case stated, it appears that the State, some time after the maturity of the bonds, paid the principal, together with interest thereon to the time when the bonds became payable; and the only question presented for our decision is whether, as matter of law, the principal of the bonds bore interest after maturity, and according to our opinion upon this question judgment is to be entered for the one party or the other.

Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money or of property, or of compensation, to which the plaintiff is entitled; and, as has been settled on grounds of public convenience, is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of its legislature, or by a lawful contract of its executive officers. *United States* v. *Sherman,* 98 U. S. 565; *Angarica* v. *Bayard*, 127 U. S. 251, 260, and authorities there collected; *In re Gosman*, 17 Ch. D. 771.

In *Gosman's Case*, just cited, where the personal property of a deceased person had been taken possession of by the Crown for want of known next of kin, and was afterwards recovered by petition of right by persons proved to be the next of kin, who claimed interest for the time the Crown held the property, Sir George Jessel, Master of the Rolls, speaking for the Court of Appeal, summed up the law of England, in this short judgment: "There is no ground for charging the Crown with interest. Interest is only payable by statute or by contract."

In *United States* v. *Sherman*, the Circuit Court of the United States for the District of South Carolina had certified that there was probable cause for an act done by an officer of the United States, for which judgment had been recovered against him in that court; and consequently, by express acts of Congress, "the amount so recovered" was to "be provided for and paid out of the proper appropriation from the treasury." Acts of March 3, 1863, c. 76, § 12, 12 Stat. 741; July 28, 1866, c. 298, § 8, 14 Stat. 329. This court held that the judgment creditor was entitled to receive from the United States the amount of the judgment only, without interest; and Mr. Justice Strong, in delivering the opinion, said: "When the certificate is given, the claim of the plaintiff in the suit is practically converted into a claim against the government; but not until then. Before that time, the government is under no obligation, and the Secretary of the Treasury is not at liberty to pay. When the obligation arises, it is an obligation to pay the amount recovered; that is, the amount for which judgment has been given. The act of Congress says not a word about interest. Judgments, it is true, are by the law of South Carolina, as well as by Federal legislation, declared to bear interest. Such legislation, however, has no application to the government; and the interest is no part of the amount recovered. It accrues only after the recovery has been had. Moreover, whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes." 98 U. S. 567, 568.

In *Angarica* v. *Bayard*, this court held that on money received by the Secretary of State from a foreign government under an international award, invested by him in interest-bearing securities of the United States, and ultimately paid to the petitioner, interest was not payable, because the money was in effect withheld by the United States; and Mr. Justice Blatchford, delivering judgment, said: "The case, therefore, falls within the well settled principle that the United States

are not liable. to pay interest on claims against them, in the absence of express statutory provision to that effect. It has been established as a general rule, in the practice of the government, that interest is not allowed on claims against it, whether such claims originate in contract or in tort, and whether they arise in the ordinary business of administration, or under private acts of relief, passed by Congress on special application. The only recognized exceptions are where the government stipulates to pay interest, and where interest is given expressly by an act of Congress, either by the name of interest or by that of damages." 127 U. S. 260.

In *United States* v. *McKee*, where a claim against the United States for moneys and supplies furnished during the Revolutionary War had been referred by Congress to the Court of Claims with directions to be governed in its adjustment and settlement "by the rules and regulations heretofore adopted by the United States in the settlement of like cases," interest was allowed by that court, and by this court on appeal, because Congress was shown to have allowed interest in many private acts for the settlement of similar claims. 10 C. Cl. 231, 235 ; 91 U. S. 442, 451.

In *United States* v. *Bank of Metropolis*, 15 Pet. 377, cited at the bar, no question of interest was suggested by counsel, or considered by the court.

In North Carolina, as elsewhere, in an action against a private person, to recover a sum certain and overdue, interest may doubtless be recovered, either according to the dictum in *Devereaux* v. *Burgwin*, 11 Iredell, 490, 495, on the ground of a "promise to pay being implied from the nature of the transaction;" or, as more accurately stated in other cases, as damages for nonperformance of the defendant's contract. *State* v. *Blount*, 1 Haywood, 4; *Hunt* v. *Jucks*, 1 Haywood, 173; *McKinlay* v. *Blackledge*, 2 Haywood, 28. See *Young* v. *Godbe*, 15 Wall. 562, 565 ; *Holden* v. *Trust Co.*, 100 U. S. 72, 74; *Price* v. *Great Western Railway*, 16 M. & W. 244, 248 ; *Cook* v. *Fowler*, L. R. 7 H. L. 27, 32, 36, 37 ; *Union Institution for Savings* v. *Boston*, 129 Mass. 82.

But it is equally well settled, by judgments of the Supreme

Court of North Carolina, that the State, unless by or pursuant to an explicit statute, is not liable for interest, even on a sum certain which is overdue and unpaid.

In *Attorney General* v. *Cape Fear Navigation Co.*, 2 Iredell Eq. 444, 454, decided in 1843, in a suit on behalf of the State to recover dividends due to it as a stockholder, the corporation, by way of set-off, claimed interest for the State's failure to pay its subscription at the time when it was payable; and Chief Justice Ruffin, in delivering judgment, laid down, as undoubted law, that "the general rule is, that the State never pays interest, unless she expressly engages to do so."

In *Bledsoe* v. *State*, 64 No. Car. 392, 397, decided in 1869, under a clause in the Constitution of the State providing that "the Supreme Court shall have original jurisdiction to hear claims against the State; but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next General Assembly for its action;" a claim was made for fuel and provisions furnished to the State Insane Asylum, under written contract of the superintendent, from October, 1863, to April, 1865, with interest from the times of delivery. Upon the question of interest, the court said: "It was decided by this court, in *Attorney General* v. *Cape Fear Navigation Co.*, 2 Iredell Eq. 444, that the State is not bound to pay interest, unless there is a special contract to that effect. The contract, in this case, must be understood to have been made with reference to the law, as it then stood. But because of the changes in and the disturbed condition of the government, and because payment has been delayed for a long time, we recommend a departure from the rule, so far as to allow interest from the end of the war, say May 1, 1865, until January 1, 1869, when the plaintiff presented his claim to the General Assembly."

Whether interest not stipulated for in a contract is to be awarded as damages for nonperformance of the contract, or on the ground of an implied promise to pay it, a private person is no less chargeable with interest on debts certain and overdue for money or goods, than on promissory notes or

bonds obligatory; and the State is no more chargeable with interest in the one case than in the other.

The scope and effect of the bonds now sued on cannot be determined without a careful consideration of the provisions of the statutes from which the officers who executed the bonds derived their authority.

Under the original act of January 27, 1849, the obligations of the State for money borrowed were required to be signed by the Treasurer and countersigned by the Comptroller, "in sums not less than one thousand dollars each, pledging the State for the payment of the sum therein mentioned, with interest thereon at the rate of interest not exceeding six per cent per annum, payable semi-annually at such times and places as the Treasurer may appoint; the principal of which certificates shall be redeemable at the end of thirty years from the time the same are issued."

There is nothing in that statute to show that certificates issued under it are to be negotiable from hand to hand, or assignable by the mere act of the holder, so as to create a contract between the State and any assignee. On the contrary, the statute requires that they shall be registered at large by the Comptroller at the time of his countersigning them; and the only transfer provided for is on the books of the Treasurer; and by surrender of the old certificate and issue of a new one instead thereof to the assignee.

In that act, as no other date is mentioned for the payment of the principal than the date at which it "shall be redeemable," it would be difficult (as is admitted by the learned counsel for the United States, citing *Vermilye* v. *Adams Express Co.*, 21 Wall. 138, 145) to attribute to the word "redeemable" any other meaning than "payable;" and the provision that the interest shall be "payable semi-annually at such times and places as the Treasurer may appoint," naturally relates to interest before the date fixed for payment of the principal, and could hardly be extended to imply an authority to the Treasurer and the Comptroller to bind the State to pay interest after that date.

But any doubt upon this point is removed by the act of De-

cember 22, 1852, pursuant to the provisions of which the bonds in suit were issued.

This act makes new requirements, differing in many respects from, and in so far superseding, the requirements of the former act. It requires all certificates, thereafter issued for money borrowed by the State, to be under seal of the State signed by the Governor and countersigned by the Treasurer. It clearly shows that they are to be negotiable, as well by requiring them to " be made payable to —— or bearer," as by requiring a registry of a memorandum of their original issue only. It omits the provision that the principal " shall be redeemable " at the end of thirty years, and instead thereof prescribes that " the principal shall be made payable by the State at a day named in the certificate or bond." It requires " coupons of interest to be attached to the certificates; " and both the certificates and the coupons are required to be made payable, either at such bank or place in the city of New York as the Treasurer may designate, or at the public treasury in Raleigh, if preferred by the purchaser.

From the general principle, that an obligation of the State to pay interest, whether as interest or as damages, on any debt overdue, cannot arise except by the consent and contract of the State, manifested by statute, or in a form authorized by statute, it appears to us to follow as a necessary consequence that no authority to the officers of the State to bind it by such an obligation can be implied from the act of 1852, requiring the certificates or bonds issued under it to be made payable at a day named in them, and to have coupons of interest attached to them, and making no mention whatever of interest after the date at which the principal is payable.

In the light of the provisions of this statute, the agreement in the bonds sued on, that the principal sum shall be " redeemable in good and lawful money " at the place and day therein designated, must be deemed equivalent to an agreement that they shall be payable on that day; and if the further provision by which interest is payable half-yearly " from the date of this bond and until the principal be paid, on surrendering the proper coupons hereto annexed," could, upon the face of

the bonds, and without regard to the laws under which they were issued, be construed to include interest after the date at which the principal is payable, and for which interest there were no coupons to be surrendered, it cannot be allowed such an effect, because the State of North Carolina has never authorized its officers to incur any such obligation in its behalf.

This disposes of all the suggestions made in behalf of the United States, except the argument that, the bonds being payable in New York, the payment of interest is to be governed by the law of New York, according to which it is said that the State would be liable to pay interest, like a private person. *People* v. *Canal Commissioners*, 5 Denio, 401.

But these bonds are obligations of the State of North Carolina; they were executed, delivered and registered in North Carolina by high officers of the State; the rate of annual interest is fixed at six per cent, the legal rate in North Carolina, and not seven per cent, the then legal rate in New York; and the fact that the bonds were made payable at a particular bank in New York, pursuant to the authority conferred by the statute of North Carolina upon its Public Treasurer, instead of being made payable, as by that statute they might have been, at Raleigh, the capital of the State, cannot affect the extent of the obligation of the State of North Carolina. The manifest object of the alternative, allowed by the statute, of making the bonds payable either at New York or at Raleigh, was to promote the convenience of bondholders; and not to submit the obligation, the construction or the effect of the bonds to the operation of different laws, according to the place at which they should actually be made payable. The case, therefore, falls within the general rule, well established in this court, that contracts are to be governed, as to their nature, their validity and their interpretation, by the law of the place where they are made, unless the contracting parties appear to have had some other place in view. *Liverpool Steam Co.* v. *Phœnix Ins. Co.*, 129 U. S. 397, 453.              *Judgment for the defendant.*

MR. JUSTICE MILLER, MR. JUSTICE FIELD and MR. JUSTICE HARLAN dissented.