## BUSSER v. UNITED STATES.
### No. 1467.

District Court, E. D. Pennsylvania.
Jan. 23, 1942.

Charles Myers (of Barnes, Myers & Price), of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Robt. R. Reynolds, Jr., Sp. Assts. to the Atty. Gen., for defendant.

KALODNER, District Judge.

This is an action to recover interest with respect to a refund of Federal Estate Tax. The case involves the issue of the right of the plaintiff to recover interest where the overpayment on account of Federal Estate Taxes was made on or about the due date of the tax, but prior to the filing of the Federal Estate Tax Return.

A jury trial was waived and the case was heard before the court on the pleadings and stipulation of facts without additional testimony.

A motion for summary judgment was filed on behalf of the defendant, which motion was not argued previous to trial.

Findings of Fact.

The stipulated statement of facts which is hereby adopted as the findings of fact of this court is as follows:

"1. Philip Price by Decree dated April 7, 1933, of the Court of Common Pleas No. 3 of Philadelphia County, as of June Term, 1916, No. 1061, was appointed Substituted Trustee under Indenture executed by Mabel S. Sharp, later Mabel S. S. Hartmann, the above named decedent, dated January 23, 1888, and said appointment has not been revoked, and said Philip Price has at all times since said appointment acted as Substituted Trustee under said Indenture. As such Substituted Trustee Philip Price had in his possession on the date of decedent's death certain property which constituted part of the decedent's gross estate within the meaning of the Federal Estate Tax law. Philip Price, therefore, as such Substituted Trustee, filed with the Collector of Internal Revenue at Philadelphia on October 11, 1937, a preliminary notice on Form 705 of the property in his possession.

"2. On August 30, 1938, Philip Price received from the Collector of Internal Revenue at Philadelphia a letter dated August 29, 1938, enclosing Forms 706 Federal Estate Tax Returns * * *. Philip Price thereupon wrote to the Collector of Internal Revenue on August 30, 1938, asking for an extension of time to file the returns * * *, and the Collector replied on the following day granting an extension of thirty days * * *.

"3. On August 31, 1938, Philip Price sent the Collector of Internal Revenue a check to his order for $6,800.00, with a letter * * * which was acknowledged by the Collector by letter dated September 1, 1938. * * *

"4. The reason why the check above referred to was drawn by Philip Price was because at that time he had in his possession as such Trustee most of the assets in which the decedent had an interest situated in the United States, and at that time Ralph C. Busser, Jr., Ancillary Administrator c. t. a. of the estate of the decedent did not have in his possession sufficient assets for payment of the estimated tax. Said payment was made on behalf of said Administrator under an agreement and understanding with said Administrator that any necessary adjustment between Philip Price and said Administrator would be made later as to the amount of tax properly chargeable against the funds held by each in their respective fiduciary capacities, and this adjustment has been made in respect of the Federal Estate Tax already paid, which it is conceded was due and payable.

"5. On October 3, 1938, plaintiff filed with the Collector of Internal Revenue at Philadelphia an executed Federal Estate Tax Return and certain other papers accompanied by a letter dated October 3, 1938. * * * On October 6, 1938, the Collector wrote plaintiff enclosing a receipt covering payment of $5,000.49 tax shown on said return. * * * On October 8, 1938, the Collector orally advised plaintiff's attorney that if the audit of his return showed any overpayment, such overpayment would be refunded without plaintiff filing a claim for refund.

"6. On October 30, 1940, plaintiff filed with the Collector of Internal Revenue at Philadelphia a claim for refund. * * * On November 2, 1940, the Collector wrote plaintiff enclosing receipt in duplicate covering the excess payment of $1,799.51. * * *

"7. The refund check in the sum of $1,-799.51, referred to in Paragraph 7 of plaintiff's petition, was received by him on March 25, 1941.

"8. No interest has been allowed to plaintiff or paid to plaintiff on the said amount of $1,799.51 which was refunded to him. * * * *

"9. On October 11, 1937, Philip Price, Substituted Trustee as aforesaid, filed with the Collector of Internal Revenue at Philadelphia, a preliminary notice on Form 705 in duplicate of the estate of the above named decedent. * * *

"10. Mabel S. S. Hartmann died June 2, 1937, being at the time of her death a citizen of Germany, residing in Munich. On December 14, 1937, the Register of Wills of Philadelphia County granted Ancillary Letters of Administration cum testamento annexo on the Estate of Mabel S. S. Hartmann, deceased, to Ralph C. Busser, Jr., the above named plaintiff, and said grant of Letters has not been revoked and is now in full force and effect. Plaintiff resides at 3451 Midvale Avenue, Philadelphia, Pa. On October 3, 1938, plaintiff filed with said Collector of Internal Revenue at Philadelphia his Federal Estate Tax Return on Form 706 in duplicate, which Return showed the Federal Estate Tax due to be $5,000.49.

"11. * * * the check of Philip Price, Trustee, to the order of the Collector of Internal Revenue for $6,800.00, referred to in paragraph 3 hereof, * * * was paid into the Treasury of the United States, and this amount was credited on the books of the Collector of Internal Revenue to unidentified account No. 9."

In addition to the stipulated facts, the court makes the following

### Special Findings of Fact.

12. On September 1, 1938, Philip Price as Substituted Trustee under Indenture executed by Mabel S. S. Hartmann, deceased, on behalf of plaintiff, made an overpayment of $1,799.51 to the Collector of Internal Revenue at Philadelphia, in respect of the Federal Estate Tax on the Estate of Mabel S. S. Hartmann, deceased.

13. The check for the refund in the amount of $1,799.51 was dated on or about February 24, 1941, although not actually delivered to the plaintiff until March 25, 1941.

### Discussion.

The issue in this case is a very narrow one. Sec. 614 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 876, 26 U.S.C.A. Int. Rev.Code, 3771, provides:

"Interest on overpayments

"(a) Rate. Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum.

"(b) Period. Such interest shall be allowed and paid as follows:

\* \* \* \* \*

"(2) Refunds. In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such checks shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon."

The foregoing provisions also appear in the Internal Revenue Code, approved February 10, 1939, § 3771, in the identical language.

The contention of the government is that where at the time of the payment of the tax the amount of the tax has not yet been definitely determined by the taxpayer and no return has been filed, there cannot be an "overpayment" of tax within the meaning of the above statutory provision. This view is pressed upon the court, despite the fact that in the instant case an extension of time was granted by the Commissioner of Internal Revenue for the filing of the Federal Estate Tax Return, and despite a warning issued by the Collector of Internal Revenue four days before the due date of the Estate Tax that "a heavy rate of interest is imposed by law upon delinquent payments".

I cannot agree with the strained reasoning in the defendant's argument, which attempts to show that there cannot be a "payment" in respect to a tax unless the exact amount due is known by the taxpayer at the time of the payment. If this reasoning were correct, cases of "overpayment" would be rare, since obviously if the exact amount due were known at the time of payment by the taxpayer no "overpayment" would be made. Nor can I read into the statute a limitation that interest shall only be allowed where the payment is made simultaneous with or subsequent to the filing of the return.

I am not unmindful of the general rule that interest is not to be allowed on claims against the government, except in cases where the government has stipulated to pay such interest or where provision for

payment of such interest is expressly made by an Act of Congress. United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336.

Since Congress has expressly provided for the payment of interest on "overpayments" of taxes, the issue here narrows down to the problem as to whether or not there has been an "overpayment".

■ The government claims that the payment made by the plaintiff on account of estate taxes on September 1, 1938, was not a "payment" but a "deposit". I find nothing in the record to indicate that the plaintiff submitted the sum of $6,800 on September 1, 1938, as a "deposit". The evidence is directly to the contrary. In a letter dated August 31, 1938 (Exhibit "C" of the Stipulation of Facts) the plaintiff through the duly authorized representative of the estate transmitted a check for $6,800 to the Collector of Internal Revenue with a letter stating inter alia:

"I estimate at this time that the amount of taxable estate is approximately $80,000. I therefore enclose herewith a cheque for $6800 payable to the order of the Collector of Internal Revenue, with the request that *you apply this on account of the tax in the above estate* ultimately shown to be due by the Estate Tax Return when filed.

"If the Return shows that a greater tax is due I shall, upon filing the Return, attach to it a cheque for the difference between the $6800 *paid* herewith, and such amount." (Emphasis supplied.)

It is to be noted that in transmitting the check the Collector was specifically requested to apply the sum of $6,800 "on account of the tax in the above estate".

This payment was based upon an estimate of the tax and it is unquestioned that the estimate was made in good faith. The payment was specifically directed to be applied on account of tax (being the estate tax which was due, in this case, not later than September 2, 1938).

■ The government's contention is that the said payment of $6,800 was actually deposited in a special account by the Collector (unidentified account No. 9). There is nothing in the record, however, to indicate that this method of bookkeeping adopted by the Collector was known to the taxpayer, and hence no importance can attach to this fact. Moses v. United States, D.C., 28 F.Supp. 817.

The government also strongly urges that the voluntary payment of an estimated amount of tax is for the protection of the taxpayer in avoiding the accumulation of interest charges and that "the taxpayer should not profit from an act which is permitted for his own benefit". The difficulty with this contention is that the government charges interest for underpayments of tax where the taxpayer's estimate is too low, and it certainly would be equitable to construe the applicable statute, if clearly capable of such construction, in such a manner as to equalize charges and credits for interest in cases of this kind.

As was stated in Kales v. United States, 6 Cir., 115 F.2d 497, 500: "In the administration of Internal Revenue Laws, we are concerned with substance and not form. The prerequisite refunding statutes requiring claim for refund before suit, should receive a practical construction to effectuate their purpose. The income tax law is complex and does not always permit a determination of the taxpayer's liability in the first instance. Inevitable mistakes occur. Statutory provision is made for the adjustment of the tax where understated by the taxpayer and as a corollary a statutory method is provided to relieve a taxpayer from overstatements. * * *"

Were it not for conflicting decisions in two recent cases, it would be unnecessary to discuss the construction of the statutory provision at much length, since the construction of the Act as applied to the facts of this case seems quite simple. However, the District Court for the Southern District of New York in the case of Moses v. United States, supra [28 F.Supp. 818], decided July 6, 1939, held that where a payment of $20,000 was made to "apply on account of the federal estate tax liability" and a subsequent estate tax return showed a liability for only $9,612 (which liability was subsequently increased by an additional assessment of $2,447.98), that such original payment should be considered in the nature of a "deposit" and that the taxpayer was not entitled to interest on the "overpayment".

Said the court at page 819 of 28 F.Supp.: "The taxpayer has all the advantage; the computation of the debt is his own, and he is done no injustice by insistence on his own accuracy."

A contrary conclusion was reached by the Court of Claims in the case of Atlantic Oil Producing Co. v. United States, 35 F.

Supp. 766, decided December 2, 1940. The latter case, which dealt with an overpayment of Federal capital stock tax based on an estimated amount of tax prior to the filing of the return, held that the taxpayer was entitled to interest on the overpayment. In answering the argument made by the government that the payment of the estimated tax was to be treated as a "deposit", the Court of Claims said (page 768 of 35 F.Supp.) :

"The defendant says the amount paid on June 30, 1936, was not an overpayment, but merely a deposit. It says that a payment is the delivery by a debtor to his creditor of the amount due in satisfaction of his debt, and that this $30,000 was not delivered in satisfaction of a debt and, therefore, was not a payment. Manifestly this is not the sense in which the word 'payment' was used. The act speaks of an overpayment, of a payment that more than satisfies the debt."

The Court of Claims in the Atlantic Oil Producing Co. case considered the contrary decision of the Southern District of New York in the Moses case, and decided not to follow it, because the court felt the statute clearly entitled the taxpayer to the payment of interest on an overpayment of tax based upon an estimate made in good faith.

It is to be noted that no appeal was taken by the government from the decision in the Atlantic case.

I am in accord with the ruling of the Court of Claims.

While this matter was under consideration the U. S. District Court for the Northern District of Illinois, in the case of Chicago Title & Trust Co., Executor (McCormick Estate) v. United States, 45 F. Supp. 323, (decided December 15, 1941) allowed interest on an overpayment of Federal estate tax paid upon the basis of notice of a tentative deficiency of estate tax while there was pending proceedings protesting the deficiency. The payment was made for the purpose of obtaining a release of lien on certain personal property belonging to the estate. The Commissioner of Internal Revenue, acting upon the insistence of the Comptroller General, refused to pay interest upon the refund on the ground that the previous payment on account of the estate tax to obtain a release of the lien was in the nature of a "cash bond" or "deposit". The court in its opinion referred to the conflicting decisions in Atlantic Oil Producing Co. v. United States, supra, and Moses v. United States, supra, and stated that it was not in agreement with the conclusion reached in the Moses case, although it stressed that there were factual differences between the Moses and Chicago Title and Trust Co. cases. The court in the Chicago Title & Trust Co. case allowed interest on the refund up until the date of the refund (no question was raised as in the present case with respect to the provisions of paragraph (b) (2) of Sec. 3771 of the Internal Revenue Code).

I have considered the legislative history of Sec. 614(a) of the Revenue Act of 1928, and am satisfied that my conclusion is fully consonant with that history.

In its reply brief the government asks the court to rule that in the event it be decided that the plaintiff is entitled to interest, that interest should not be computed up to the date of the receipt of the refund check by the plaintiff (March 25, 1941), but to an earlier date, citing paragraph (b) (2) of Sec. 3771 (which provisions are the same as in the 1928 Revenue Act, supra). While the Stipulation of Facts does not specifically give the court the date of the refund check, the notice of refund which is attached to the Stipulation of Facts as "Exhibit J" is dated February 24, 1941, and states that the Treasury check covering the amount of the refund "is transmitted herewith". From this fact the court has concluded that the date of the refund check was approximately February 24, 1941.

In the cases cited, where other courts have granted a recovery of interest on refunds under similar circumstances as in this case, apparently no issue was raised with respect to the date to which interest was to be computed, and in both the Atlantic Oil Producing Co. case and in the Chicago Title & Trust Co. case interest was computed up to the date of the mailing of the refund check without apparent objection on the part of the government.

In United States v. Wurts, 303 U.S. 414, 417, 58 S.Ct. 637, 639, 82 L.Ed. 932, where the question under consideration was the proper calculation of the period for the commencement of a suit by the government to recover an erroneous tax refund, the Supreme Court quoted from House Report No. 2, 70th Congress, 1st Session, pp. 34, 35, containing the Committee Report on the Revenue Act of 1928.

332

This quotation was as follows: "The principal change made in existing law is that in the case of a refund the interest period now terminates with the *allowance* of the refund, a date which often precedes the actual making of the refund."

The Supreme Court in the Wurts case also quotes from the Revenue Act of 1932, c. 209, 47 Stat. 169, § 1104, 26 U.S.C.A. § 1670(3), 26 U.S.C.A. Int.Rev.Acts, page 653, to ascertain from the statutes the date of "allowance of refund". That section of the 1932 Revenue Act provides as follows:

"Where the Commissioner has (before or after June 6, 1932 [the enactment of this Act]) signed a schedule of overassessments in respect of any internal revenue tax imposed by the Revenue Act of 1932 [this Act] or any prior revenue Act, the date on which he first signed such schedule (if after May 28, 1928) shall be considered as the date of allowance of refund or credit in respect of such tax."

It would appear from the above statutory provisions that interest should be computed up to the date of the allowance of the refund, which would technically be the date of the signature by the Commissioner on the schedule of overassessments, including the overassessment in issue, *provided only* that where the date of allowance is more than thirty days prior to the date of the refund check, then the date used for the expiration of the interest period shall be not more than thirty days preceding the date of the refund check.

Unfortunately, in the present case, the Stipulation of Facts does not indicate the date of the refund check. All that the record discloses is the date of notice to the taxpayer of the granting of the refund (February 24, 1941) and the date of the receipt of the refund check by the taxpayer (March 25, 1941). Rather than reopen the case for further evidence on this minor point, the court will compute interest up to February 23, 1941, being thirty days immediately preceding receipt of the refund check.

Judgment should be entered for the plaintiff.

### Conclusions of Law.

On the facts found we conclude as a matter of law:

1. The plaintiff made an overpayment in respect to Federal estate tax in the amount of $1,799.51 on September 1, 1938.

2. Plaintiff is entitled to recover interest at the rate of six per cent per annum on the sum of $1,799.51 from September 1, 1938 (the date of payment), until February 23, 1941.

3. Judgment should be entered for the plaintiff and against the defendant, with costs.

4. Defendant's motion for summary judgment is hereby denied.

An order for judgment may be submitted in accordance with this opinion.