UNITED STATES v. CERTAIN LANDS IN
ST. CHARLES COUNTY, MO., KNOWN
AS WELDON SPRING AREA.

Nos. 763, 766, 779, 783, 786, 789, 790, 793,
803, 806, 813, 819.

District Court, E. D. Missouri, E. D.

May 5, 1945.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., M. Walker Cooper, Sp. Asst. U. S. Atty., of St. Louis, Mo., Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo. (J. Edward Williams, Acting Head, Lands Division, and Victor C. McCrea, Atty., Department of Justice, both of Washington, D. C., of counsel), for plaintiff.

742

William R. Gentry, Samuel M. Watson, and Oliver T. Johnson, all of St. Louis, Mo., Webster Karrenbrock, of St. Charles, Mo., William H. Allen, Cox & Blair, and Redick O'Bryan, all of St. Louis, Mo., William Waye, Jr., of St. Charles, Mo., Roscoe Anderson, W. R. Gilbert, Harry Richards, and Igoe, Carroll, Keefe & Coburn, all of St. Louis, Mo., William J. Becker, and E. Evan Hughes, both of Clayton, Mo., and Richard D. Shewmaker, of St. Louis, Mo., for various landowners defendants.

Walter R. Brown. of St. Louis, Mo., for Federal Farm Mortgage Corporation, C. S. Hale, trustee, intervening defendant.

Blatchford Downing and Caldwell, Downing, Noble & Garrity, all of Kansas City, Mo., for R. Newton McDowell, amicus curiæ.

HULEN, District Judge.

These cases are now before this Court on the question whether the defendant landowners shall be paid interest, raised by motion on the part of plaintiff for judgment in condemnation of defendants' land, and judgment for the defendants for the sum agreed to in option contracts between plaintiff and defendants, but without interest, and counter motions by defendants substantially like plaintiff's motion, but asking for interest on the sum remaining undeposited on the contract price, since date of taking by the plaintiff. Like motions appear in each case and are now ruled.

The above numbered cases are part of many cases growing out of the acquiring by the Government of land at Weldon Springs for war purposes. Without going into details of the history of the acquiring of the land by the Government, suffice it for the purpose of the present question to recite that in the ·cases now before this Court, the landowners and the Government entered into individual, but like, option contracts, for the sale of the land to the Government in 1940. The option contracts were accepted by the Government and possession of the lands thereby taken by the Government. Subsequently the Government charged that the option contracts were illegal and sought to repudiate the contracts which had not been closed and to acquire the land by the usual condemnation proceedings. In such cases, including those now before the Court, the plaintiff filed a declaration of taking in conventional form and deposited a sum with the Clerk of the Court, based upon an estimate of value. This estimate was less than the contract prices. It is interest on this deficit that is here involved. This move by plaintiff was opposed by the landowners. There seems to have been acquiescence if not agreement that the issue thus created would be tried out in three cases, one before each Court of this division. After success for the position of each party in the lower courts, a decision of the Supreme Court settled the controversy in favor of the landowners, and sustained the validity of the option agreements. Muschany et al. v. United States, 65 S.Ct. 442, 445, 89 L. Ed. ——.

The litigants are not now in accord in their interpretation of the decision of the Supreme Court. Learned counsel for the landowners insist that the opinion of the Supreme Court supports their claim for interest, and equally learned counsel for the Government insist with equal earnestness that the decision of the Supreme Court supports their position that no interest shall be paid. The question of interest was not directly before the Supreme Court, but it may serve some purpose in determining what effect that decision has on the present question, to examine the issues.

Following the act of the Government in serving notice of repudiation of the option agreements, it proceeded to initiate condemnation proceedings, wholly without any reference to the option agreements, by filing, in the early part of 1941, (1) motion for Leave to File Petition for Order of Summons, which was granted; (2) petition to Condemn and Fix Compensation; (3) declaration of Taking, under Section 171, 50 U.S.C.A. and 46 Stat. p. 1421, 40 U.S.C.A. § 258a. Summons was issued and served upon the landowners. Pleadings of the landowners are now substantially in agreement. They allege the execution of the option contract between the Government and the landowner; that the Government is bound by the option agreement; and therefore without power to proceed under the condemnation statutes independent of the terms of the option contract. The Supreme Court, in connection with the issues presented by the pleadings, stated:

"Thereafter the petitioners herein filed their answers in which they consented to the condemnation and demanded that the

price which was fixed in the option, and accepted by the Government, be adopted by the trial court as *just compensation."* (Emphasis added)

Interpreting the contracts, under which the landowners now claim interest, the opinion states:

"The offer was to sell to the Government at a *fixed, definite price.* The Government when it accepted this offer *agreed to pay this set amount and no more.* The contract contains no provision allowing adjustment of price based on possible future indeterminate expenses. * * * *The Government knew the total cost* when it became bound on the contract. * * * Since the United States is the purchaser of the land *at the option price,* no one can receive cost plus anything. Neither the vendors nor McDowell agrees to buy from a third party and sell to the Government at an advance." (Emphasis added)

We understand the position of the landowners to be that if the Government resorts to condemnation proceedings under the contracts, the price of the lands agreed to in the option shall be accepted as the base, and "the Court should accept the agreed value as the verdict" and then proceed from that point on "under the provisions of Section 258a" 40 U.S.C.A. § 258a, 46 Stat. 1421. This the defendants assert is the proper interpretation of the option contract. Is the contract subject to such interpretation?

█ The option contract should be read as a whole and interpreted from its four corners.[1] The first paragraph fixes the

[1] The form of option contract used, in all cases, is as follows:

"Option to Purchase Land.

"Know All Men By These Presents: That the undersigned ...... and ...... his wife, for and in consideration of One Dollar ($1.00), paid by the United States of America, hereinafter referred to as the Government, the receipt whereof is hereby acknowledged, hereby agrees for ...... heirs, executors and assigns, to sell and convey to the Government for the consideration of ...... that certain piece or parcel of land situated in the ...... more particularly described as follows:

"Upon exercise of this option by the Government, the undersigned agrees to pay to R. Newton McDowell a commission of five per cent (5%) of the gross sales price as full payment for the services of said R. Newton McDowell in procuring such sale, preparing the deed or deeds for the conveyance of said land and arranging for settlement and closing of the transaction.

"The undersigned hereby grants to the Government the right of immediate occupancy and use of the land for any purpose whatsoever from and after the acceptance by the Government of this option, which acceptance shall be within thirty (30) days after date hereof, until such time as said land is conveyed to the Government by the undersigned, the title approved by the Attorney General of the United States as required by law, and the agreed purchase price paid by the Government to the undersigned.

"The undersigned further agrees that .... will execute and deliver a general warranty deed conveying the fee simple title to the above described land to the United States of America, free and clear of all taxes, liens and encumbrances of every kind and character, including stamps, taxes and etc.; and the undersigned will also furnish, without cost to the Government, a certificate of title of The Kansas City Title Insurance Company to the said land satisfactory to the Attorney General of the United States and after examination of the deed and certificate of title by the Attorney General, the undersigned will have said deed recorded and will furnish a certificate of title of the said The Kansas City Title Insurance Company showing title to be good and marketable as vested in the United States of America, free of all liens and encumbrances. In the event the title shall be unmerchantable, the undersigned agrees to make said title merchantable at his own expense.

"Upon furnishing of final certificate of title as above showing title to be vested in the United States of America, the agreed purchase price above mentioned will be paid by the Government to the undersigned.

"If for any reason the title to the land is not approved by the Attorney General, the Government will proceed to acquire the land by condemnation proceedings instituted in the District Court of the United States in which said property is located, under a consent verdict fixing the award at the agreed valuation and in accordance with all the terms and provisions of this option and will upon filing its petition in such proceedings deposit said agreed purchase price with the clerk of said court, same to be disbursed by said officer pursuant to the decree entered in such condemnation proceedings.

"The occupancy and use of the land by the Government as granted aforesaid

consideration for which the owner agrees to sell and the Government agrees to buy the particular tract of land described. On acceptance of the option to purchase the land at the agreed price, the plaintiff may take possession. There is no provision for payment for the land at this time. It is provided that title may be acquired by the Government in either one of two ways: First, by warranty deed. If this procedure is followed, the contract provides that upon certificate of title "showing title to be vested in the United States of America" the agreed purchase price will be paid. The second method of vesting title under the agreement, namely by condemnation proceedings, is conditioned "if for any reason the title to the land is not approved by the Attorney General." Under this procedure, the time of payment is as follows: The Government is to institute condemnation proceedings "under a consent verdict, fixing the award at the agreed value and in accordance with all the terms and provisions" of the option. Upon the Government filing its condemnation petition, *under the terms of the contract,* the Government is to "deposit said agreed purchase price," with the Clerk. The contract does not provide any date or time for the institution of condemnation proceedings where they are instituted under the terms of the contract. The contract does not provide for deposit of any sum by the Government with the Clerk, when the condemnation proceedings are under the terms of the contract except "said agreed purchase price."

Comment has been made in this case, that after four years the Government says it is ready to comply with the terms of the contract. That position on the part of the Government was the result of the decision of the Supreme Court of the United States. There has been no claim made, and we know of no justification for its being made, of bad faith on the part of the Government in contesting the validity of the option contracts. Neither has there been any instance of purposeful delay called to our attention.

There are many landowners involved in these proceedings, represented by various counsel. Ingenious arguments have been advanced why interest should be allowed on the purchase prices remaining undeposited with the Clerk and due to various landowners under the option contracts. But the controlling question is, does the fact that the Government contested the validity of the option contract and that such contest proceedings entailed a considerable period of time, during which the landowners have been deprived of the use of part of the money, give to the landowners a legal claim for interest on the undeposited amount of the agreed purchase price? We have little doubt that had the Government initially recognized the option contracts by proceeding to perfect the title to the land by condemnation proceedings as provided for in the agreement, there would have been no claim made for interest during the period intervening between the taking of possession and the deposit of the agreed purchase price with the clerk. We are not here called upon to determine the equities of the landowners' claims. There may be arguments on both sides of that question. This Court can only allow the landowners interest on the sums involved if a legal basis therefor exists. The basis for such an allowance must be found either in the option contracts or in some statute providing for the payment of interest. Directly in point is the opinion of the Supreme Court in the case of United States ex rel. Angarica de la Rue v. Bayard, 127 U.S. 251, 8 S.Ct. 1156, 1161, 32 L.Ed. 159, loc. cit. 162:

"It has been established as a general rule, in the practice of the government, that interest is not allowed on claims against it, whether such claims originate in contract or in tort, and whether they arise in the ordinary business of administration or under private acts of relief, passed by congress on special application. The only recognized exceptions are where the government stipulates to pay interest, and where interest is given expressly by an act of

---

shall not be interrupted, but shall continue to be enjoyed by the Government throughout the pendency of said condemnation proceedings.

"This Option is executed in triplicate at ...... ...... this ...... day of ......, 19...

"Witness:

...........

...........

...........

...........

...........

"Accepted by and on behalf of the United States of America this .... day of ...... 19...

.............."

congress, either by the name of interest or by that of damages."

The option contracts provide a certain fixed sum as "the consideration" for transfer from the landowner to the Government of the property described in the agreement, without qualification for the payment of interest in the event payment is delayed contrary to the terms of the contract. There is no language in the contract indicating an understanding that under any circumstances the Government was to pay the landowners one ·cent more than the fixed purchase price set out in the contract. The contract, by its terms, recognizes there will be an interval of time be tween the taking possession of the land under the agreement and payment of the sale price fixed by the agreement. The Government is given the right of "immediate possession" "after acceptance" of the option contract. Provision is then made for furnishing of a certificate of title after delivery of the deed, at which time "the agreed purchase price" is to be paid, or delivery of the agreed purchase price made "to the Clerk of the Court" in case title is perfected by condemnation proceedings. No interval of time is specified, no limitation upon time provided, between delivery of occupancy and payment of the "agreed purchase price" under either of the methods provided in the contract.

The foundation of the claims for interest in these cases is delay or default of the Government in paying for the land according to the contract. This does not authorize the payment of interest. As was said in United States v. State of North Carolina, 136 U.S. 211, 10 S.Ct. 920, 922, 34 L. Ed. 336, loc. cit. 339:

"But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes."

The contract could have provided for interest between the time the Government took possession of the land and the landowners received the agreed price. This Court cannot rewrite the contract.

■ Where a contract is entered into between an individual and the Government and does not contain a provision for the payment of interest, when the contract is enforced against the Government, a contracting party cannot collect interest from the Government even though the Government defaults in paying the contract price at the time provided in the agreement.

In the case of United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 521, 64 L.Ed. 935, the Government took possession of certain lands in Alaska on which there was a placer mining claim. When the Government took possession, the company demanded compensation, which the Government's agent promised would be paid. Twenty years later the company had reduced its claim for compensation to judgment in the Court of Claims. The company also sought interest during the intervening period. The Supreme Court held that the Company's claim was based upon an implied contract to pay the value of the property at the time of taking. Referring to the delay in paying for the property and possible hardship resulting, the Court said:

"Congress, in thus denying to the court power to award interest, adopted the common-law rule that delay or default in payment (upon which, in the absence of express agreement, the right to recover interest rests), cannot be attributed to the sovereign. United States v. North Carolina, 136 U.S. 211, 216, 10 S.Ct. 920, 34 L.Ed. 336 [338]. That rule had theretofore been uniformly applied in our executive departments except where statutes provided otherwise. United States v. Sherman, 98 U.S. 565, 567, 568, 25 L.Ed. 235 [237]. So rigorously is the rule applied, that in the adjustment of mutual claims between an individual and the government, the latter has been held entitled to interest on its credits although relieved from the payment of interest on the charges against it. United States v. Verdier, 164 U.S. 213, 218, 219, 17 S.Ct. 42, 41 L.Ed. 407 [409, 410]. This denial of interest, like the refusal to tax costs against the United States in favor of the prevailing party (Stanley v. Schwalby, 162 U.S. 255, 272, 16 S.Ct. 754, 40 L.Ed. 960, 966; Pine River Logging & Improvement Co. v. United States, 186 U.S. 279, 296, 22 S.Ct. 920, 46 L.Ed. 1164 [1172]), and the refusal to hold the United States liable for torts committed by its officers and agents in the ordinary course of business (Crozier v. [Fried] Krupp [Aktiengesellschaft], 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771), are hardships from which, with rare exceptions (William Cramp Sons [Ship & Engine Bldg.] Co. v. International [Curtis Marine Turbine] Co., 246 U.S. 28, 40, 41, 38 S.Ct. 271, 63 L.Ed. 560 [565, 566]), Congress has been unwilling to relieve those who either vol-

untarily deal with the government or are otherwise affected by its acts."

Distinguishing a case on contract and one in condemnation (referred to as "an adversary proceeding" as distinguished from the case at bar where judgment goes for the landowner for a certain amount by consent based on contract) as respects an interest claim the Court said:

"* * * and it may be that, even in the absence of the conformity provision referred to above, interest could be collected as a part of the just compensation in condemnation proceedings brought by the government. For, as suggested in United States v. Sargent [8 Cir., 162 F. 81, 89 C. C.A. 81], such a proceeding is not a suit by the landowner to collect a claim against the United States, but an adversary proceeding in which the owner is the defendant, and which the government institutes in order to secure title to land. Mason City & Ft. D. R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629. On the other hand, this suit, brought in the court of claims, is a very different proceeding. It is an action of contract to recover money which the United States is assumed to have promised to pay; and the assumed promise was to pay the value at the time of the taking."

And in that case the Court observed— "that which the Company seeks to recover is, in substance, interest," for the payment of which the contract did not provide and neither did any statute provide and therefore it was not collectible.

■ The landowners assert that their claim for payment of interest is directed under the provisions of Section 258a, 40 U.S.C.A. No other statute is relied on. This statute must be read as a whole. It provides for the acquiring of land by condemnation, and no other way. It sets out the procedure which was initiated by the Government in this case when it repudiated the option contracts. It was the procedure provided for in Section 258a, which the landowners objected to, and had their objections sustained by the Supreme Court. We do not think the provision of Section 258a has any application to these cases as they now stand. The very paragraph of that statute upon which the landowners rely to sustain their position begins by requiring "the estimated" value to be paid into Court. The statute then provides, upon payment of "the estimated" value, that "the right to just compensation (not contract price)" shall rest in the landowner. This "just compensation" is to "be ascertained" in "said proceeding," the condemnation proceedings, and no other is contemplated by the statute. Interest is included "as part of the just compensation," to be paid to the landowner when "just compensation" is fixed as provided under the mandate of the constitution and not by contract. United States v. 3.25 Acres of Land in Seneca County, D.C., 53 F.Supp. 884; United States v. Certain Land in St. Louis, D.C., 58 F.Supp. 305. Here the land was acquired under the provisions of 54 Stat. 712, 50 U.S.C.A.Appendix § 1171. This statute provides for the entering into "contracts" for the "acquisition of such land." This the parties did and it was so found by the Supreme Court.

The landowners in these cases are not being deprived of their property by condemnation proceedings by virtue of the right of eminent domain, but by a contract of sale. This is not an adversary proceeding. These proceedings are now a part of the process of executing the option contracts between the landowners and the Government. If it were a case of adversary condemnation proceedings to acquire the property, then the landowners would be entitled to "just compensation" to be fixed in the manner provided by law, including interest "as a part of the just compensation." This court cannot construe Section 258a to separate the amount of just compensation so that in the first instance it shall be a "matter of agreement" instead of "estimated" compensation, and in the second instance allow interest as a matter of "just compensation," on an agreed price. These condemnation proceedings as they now exist, under the compulsion of the decision of the Supreme Court, are simply a technical process for the perfection of title in a procedure contemplated and agreed to by the parties for that purpose and none other. This status of the proceedings was brought about as a result of the contentions of the landowners that the Government should comply with the terms of the option contracts. Landowners, having sustained the validity of the contracts, and now standing upon them, are not now in a position to seek alteration of the contracts. If all the landowners are seeking is "just compensation," the statutory procedure for determining "just compensation" has been offered them. On the other hand, having

made the choice of standing on the option contracts, their choice would seem to indicate their belief as to which remedy is to their financial interest, contract price or "just compensation." We do not think they are entitled to both.

■ Counsel for a number of the landowners stressed the fact that the declaration of taking filed by the Government in 1941 was alleged to be based on Title 40, U.S.C.A. § 258a, and other statutes. The filing of the declaration of taking by the Government in 1941 was on the assumption by the Government of a right to repudiate the option contracts. The Government already had possession of the land under the option contracts, and but for their position that the option contracts were invalid, there would have been no occasion for filing the declaration of taking. The filing of the declarations of taking was a part of the attempt by the plaintiff to acquire the landowners' property, not by virtue of the option contracts but by condemnation and fixing of "just compensation" under the condemnation statutes. This action on the part of the Government was exactly what the landowners objected to and ultimately had their objections sustained in the Supreme Court. The effect of the decision of the Supreme Court was to nullify the attempt to repudiate the option contract by the Government and all proceedings based upon an assumed right by the Government to ignore the option contracts and to bring such proceedings as have heretofore been taken by the Government into harmony with the provisions of the option contract; all of which is evidenced by the last pleading filed by the Government, asking for judgment vesting title and awarding the landowners judgment for the sum agreed upon in the option contracts. The Supreme Court turned the Government back from its attempt to proceed under the statute, at the instance of the landowners and in effect, if not in exact language, instructed the Government to proceed under the option contracts executed by virtue of Section 1, 54 U.S.Stat. 712, 50 U.S.C.A.Appendix § 1171.

Condemnation proceeding, as a supplement to a contract between the landowners and the Government fixing the value of land being acquired by the Government, is expressly provided for in the contract and is recognized by the authorities.

In the case of Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 234, 84 L.Ed. 240, the landowner and Government entered into a contract for transfer of land much like the one here. The contract contained a provision for "an agreed verdict," if condemnation proceedings were entered into to perfect the title. The Court held:

"The effect of such an agreement is to fix the value of the easement when the authority of the Court is invoked against a party to the agreement to acquire good title."

■ The Government's motion asks that the amount of the contract price be entered in the judgment. Counsel take exception to this as a variation from the word "verdict," as the term appears in the option contract, and charge that it is contrary to the terms of the option agreement. To insist that the Government comply with the letter of the contract by first having the Court prepare a form labeled "verdict" and thereafter prepare a judgment on this verdict, appears to us as calling for a useless procedure. The courts have some control over the form of their records, and parties cannot bind the courts as to the exact form those records shall take on a matter as highly technical as that here presented.

The effect of the motion of the Government, for judgment in condemnation and for the defendant fixing the compensation in accordance with the option contracts, is substantially in accord with the provisions of the option contract. The Government is attempting to proceed in accordance with the decision of the Supreme Court as conditions now exist. Defendants ask first, that a judgment in condemnation be awarded to the Government (in accordance with the option contract), second, that the compensation to be paid the defendant be fixed in the amount of the option contracts, plus interest, and that the Court order the plaintiff to pay into the registry of the court the amount of the option contract plus interest. In view of this dispute between the Government and the landowners as to the payment of interest, the Government, following the decision of the Supreme Court, has expeditiously moved for determination of the question and decision of this Court as to the amount of money which it shall pay into the registry of the court, *in accordance with the provisions of the option contracts.*

The purchase price of the land having been fixed by contract between the landowner and the Government, a contract that now has the stamp of validity of the high-

748

est court in the land, and the landowners having elected to hold the Government to that contract in these proceedings, and the contract being silent either in express terms or by implication in creating any obligation on the part of the Government to pay interest on or in addition to the sum fixed as the sale price of the land, in the absence of a statute authorizing payment of interest, we believe plaintiff's motion should be sustained and defendants' motions overruled. Orders in accordance herewith will be presented.