## UNITED STATES v. CERTAIN LANDS IN ST. CHARLES COUNTY, MO., KNOWN AS WELDON SPRING AREA.

Nos. 765, 767, 771, 777, 781, 785, 791, 797, 805, 807, 810, 811, 817, 827, 835, 841, 865, 874, 875, 877, 985, 987, 991, 995, 997, 1000, 1001, 1010, 1015, 1021.

District Court, E. D. Missouri, E. D.

June 8, 1945.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and M. Walker Cooper, Sp. Asst. U. S. Atty., and Russell Vandivort, Asst. U. S. Atty., both of St. Louis, Mo. (J. Edward Williams, Acting Head, Lands Division, and Victor C. McCrea, Atty., Department of Justice, both of Washington, D. C., of counsel), for plaintiff.

William R. Gentry, Samuel M. Watson, William R. Gilbert, Harry Richards, William H. Allen, Igoe, Carroll, Keefe & Coburn, and Robert P. Elam, all of St. Louis, Mo., Webster Karrenbrock, B. H. Dyer, and Theodore C. Bruere, Jr., all of St. Charles, Mo., Redick O'Bryan, of St. Louis, Mo., and Caldwell, Downing, Noble & Garrity and Adams, Adams & Adams, all of Kansas City, Mo., for defendants.

MOORE, District Judge.

All of these cases, except Numbers 807 and 874, now come before this Court on motions filed in each by the plaintiff, United States of America, for entry of judgment in the amount of the compensation fixed in certain option contracts, *but without interest thereon,* and certain counter-motions by defendants asking for judgment *with interest on the principal amounts* since the date of taking. Numbers 807 and 874 (Muschany and Andrews cases) are here on motions by the plaintiff to delete interest from judgments already entered, but the issues therein presented differ only slightly. This opinion is to be considered as filed in and ruling all of the above numbered separate proceedings.

The lengthy history of this condemnation litigation is already adequately documented in the Reports and needs no further recitation. The facts of the original proceedings appear in the contrary opinions of District Court Judges Davis and Collet, United States v. Certain Land Situate in St. Charles County, Mo., et al., D. C., 46 F.Supp. 921, and United States v. 94.68 Acres of Land in St. Charles County, Mo., et al., D.C., 45 F.Supp. 1016; in the Eighth Circuit Court of Appeals opinion in United States v. Muschany, 139 F.2d 661; and in the opinion of the Supreme Court of the United States in Muschany v. United States, 324 U.S. 49, 65 S.Ct. 442. In addition, the facts surrounding the present motions are ably stated in the opinion of Judge Hulen filed in Division No. 2 of this Court on the 4th day of May, 1945, 60 F.Supp. 741, covering identical motions in companion cases to those now

before this division. The issues here presented differ in no respect from those decided by Judge Hulen and, with the above references to source materials where the facts may be found, the Court will state its views and holding on the issues presented, which, I deeply regret, are not in accord with those of my learned brother Hulen.

After careful consideration of the various submitted briefs of counsel, the real issues presented for decision appear to be four in number: First, the question is raised whether there is anything in the facts of these cases that makes them a particular type of condemnation proceeding to which that part of the Statute allowing interest to landowners does not apply; second, whether if in such a condemnation proceeding interest is ever allowable, these landowners have by any contract, election, waiver, stipulation or option done anything to waive, give up, or bar themselves from, a right that they might otherwise have; third, whether, if the landowners are entitled to interest, they are entitled to it from the date of the actual taking or only from the date of the filing of the declaration of taking; and, fourth, whether the original decrees entered only in the Andrews and Muschany cases (those appealed to the Supreme Court), which expressly provide for interest, are final and binding on the interest issue in those two cases and, also, binding as precedent or through special agreement of the Government in all the other cases. The Court will discuss the above issues seriatim.

There is no dispute between the parties that the general rule is (absent a contract or statute evincing a contrary intent) that interest does not run against the United States upon claims or contracts even though there has been an unreasonable delay or default in the payment of principal upon the part of the Government. Tillson v. United States, 100 U.S. 43, 25 L.Ed. 543; United States v. North America Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935; United States ex rel. Angarica de la Rua v. Bayard, 127 U.S. 251, 8 S.Ct. 1156, 32 L.Ed. 159; United States v. State of North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336; Smyth v. United States, 302 U.S. 329, 58 S.Ct. 248, 82 L.Ed. 294, 114 A.L.R. 807. Likewise, there is no dispute that in ordinary condemnation proceedings an exception is made which Congress has by

statute approved and codified. 40 U.S.C.A. § 258a; Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566. The parts of said Statute material here are:

"In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. * * *

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; *and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court.* No sum so paid into the court shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. *If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.*" (Emphasis the Court's)

The difference of opinion between the parties first arises on the question of whether the particular facts here cause these proceedings to be a type of condemnation proceeding to which that part of the statute relating to interest is inapplicable.

■ The Court is of the opinion that under the policy of Congress, as expressed by the above statute, and under the facts, there is no valid reason why these landowners should not receive the benefit of the statutory exception. It is true that the negotiations between the Government and the landowners originally resulted in option contracts. It is also true that those contracts provided for condemnation proceedings under certain *restricted* circumstances. Those facts, however, do not change the circumstance that there are now before this Court condemnation proceedings brought under the general condemnation statute and in no respect different from any other like proceedings except in the method of ascertaining the value of the land. These are not friendly condemnation proceedings for the purpose of clearing title but, as the long history of litigation prior to these motions will readily prove, they are as completely antagonistic and adversary actions as this Court has ever seen. These proceedings for condemnation were certainly not brought within the terms of the option contracts, since those options provide only for friendly proceedings "if for any reason the title to the land is not approved by the Attorney General." It is certain that no other type of condemnation proceeding was within the contemplation of the parties when the option contracts were entered into. The history of these cases shows that the Government brought these actions as straight adversary condemnation proceedings, in complete disregard of the option contracts, and that the entrance of those contracts into the issues was by way of equitable defense on the part of the landowners. Those option contracts have played a part, therefore, in these proceedings to the extent of fixing the worth of the land, but it would be completely erroneous to say that they in any way make these a different type of condemnation proceeding, or that those options have been specifically enforced in their entirety.

Such being the facts, no reason appears on the face of the Statute why these landowners, different from any other land-

owners, should be divested of the right to interest on the deficiencies of their awards. The statute merely provides that "said compensation shall be ascertained and awarded in said proceeding and established by judgment." No distinction is made in the statute between different methods of ascertaining the compensation. Had the value of the land here been found by a jury, by commissioners, or by stipulation filed in the case, the statute in the absence of express waiver would make no distinction in regard to interest in any case where a deficiency in the deposit existed. Why, therefore, should there be any distinction because the value of the land was fixed by an agreement prior to suit between the parties, which agreement, it should be noted, was enforced against a recalcitrant Government on equitable principles?

■ These landowners certainly come within the spirit of the statute and the intent of Congress. The history of the statute, as admitted by the parties, shows that its purpose was to grant interest not as interest, but as part of the compensation, i.e., to compensate for the loss of the use of the land, or the use of the value thereof in money, pendente lite, Seaboard Air Line R. Co. v. United States, supra; United States v. Rogers, supra. The properties of these people were taken from them some time prior to the institution of these suits and only since submission of the present motions has the Government begun to deposit the full amounts due under the options. Thus, they have lost both the use of the land and the use of their money, and it was just such a situation as this that Congress intended to remedy by making the unusual exception to the rule that the United States pays no interest.

To say that this is a different type of condemnation proceeding pursuant to contract is to ignore the fact that the contracts never have been enforced in full and never will be. The original proceedings were not suits for specific performance of the contracts because, had they been, the result should have been the dismissal of these actions. On equitable principles the amount of compensation was fixed and charged against the United States under the terms of the options, but the United States itself has defaulted and still defaults on many of the terms of the contracts. For example, it has not—as the contracts provided—accepted deeds and paid the agreed purchase price upon the furnishing of satisfactory certificates of title. That it can and will never do. Neither has it brought condemnation proceedings for the sole reason assigned in the options for doing so. Nor has it, when bringing condemnation proceedings, followed the terms of the contracts, which provide that—

"The Government will proceed to acquire the land by condemnation proceedings instituted in the District Court of the United States in which said property is located, under a *consent verdict* fixing the award at the agreed valuation and in accordance with all the terms and provisions of this option *and will upon filing its petition in such proceedings deposit said agreed purchase price* with the clerk of said court." (Emphasis the Court's)

The requirement for a deposit *upon the filing* of the petition has certainly never been performed by the Government and never can be. The Government has made no offer to consent to a verdict and yet, through its Agents, contends that it simply wishes to go through with the original contract. That, it is manifest, is impossible.

The essential error in the position of the Government lies in the assumption that the effect of the opinion of the Supreme Court was to convert these condemnation proceedings back to simply technical processes for the perfection of title in a proceeding contemplated by the parties and within the terms of their contracts; or, stated in another way, to convert these proceedings into an identity with an action in the Court of Claims for specific performance of a contract. This argument erroneously assumes, first, that the Supreme Court had the power and desire to restore the status quo ante; secondly, that by striving and prevailing for the prices promised them by their Government (in the adversary proceeding forced upon them) these landowners somehow bound themselves to all the concomitants of a discarded contract procedure and simply turned back the clock some years, thereby wiping out all that had intervened; and, thirdly, that there is something inconsistent in allowing the landowners their promised price as a matter of equity and also giving them the benefits arising solely by statute from a method of procedure which was forced upon them by the Government. The reasons why the prices provided in the

options were compulsorily imposed upon the Government by the Courts are that it was felt unconscionable and contrary to public interest to allow the Government, after accepting unusual benefits, to renege on its solemn word, and justice demanded that the landowners be given by way of ascertainment of value in condemnation that which they would have received had not the Government breached the contracts. In other words, there is actually nothing in the record of this case to show that the contracts per se were to be enforced. The Government was merely allowed to follow its chosen and elected course subject only to the duty to give the promised price. Any concomitants arising, however, from that elected course (i.e., interest) were not negatived or touched upon. Since, therefore, the Government has elected its remedy of condemnation, this Court can see no valid distinction between these proceedings and any others, unless there is something in the record to show that the landowners here have waived a right that they might have otherwise possessed. The Court will next address itself to that question.

■ The option contracts involved in these cases can be the only evidence of any such waivers or elections; and the Government here makes no contention that any circumstances other than those contracts constitute any such waivers or agreements. Thus, the question simply is, did the landowners by entering into such option contracts thereby stipulate and agree that no matter what happened the sums therein specified should be the total compensation for their lands? This Court, in answer to that question, can find nothing on the face of those option contracts, or from the surrounding circumstances, to indicate any such intention on the part of the landowners, or, for that matter, the Government. Had the contracts been performed, either by conveyancing or by a friendly condemnation proceeding, as provided in the options, the argument advanced by the Government might have strength. But, as it was, the parties were contracting for the sale of their land and they naturally made no provision for interest. Had the contracts been performed in the manner contemplated on their face they would have needed no interest and been entitled to none. However, those contracts were not executed and never will be. How, therefore, can it be said that agreements to take no interest under the condemnation statutes can be found in contracts whose subject matter was something totally different than the proceeding that was subsequently brought? At the time the option contracts were executed the present proceedings were certainly not in the minds of any of the parties, and their possibility is no where reflected in those contracts. The landowners stated what they would take for their land in certain eventualities, which eventualities were the delivery of deeds in return for money (or, a friendly title clearing condemnation in a certain event). Neither of these eventualities ever occurred, but a totally different, completely unforeseen and most unwelcome litigation was commenced. The general law of contracts would certainly forbid a holding which bound a contracting party by an instrument the subject matter of which was entirely different. The Government not the landowners, breached the contract, and that contract is dead and will never be performed except that the landowners, by reason of the final holding of the Supreme Court of the United States, will be put in a monetary way in the same position as if the contracts had been executed. The question of interest in this adversary condemnation proceeding is not within the four corners of the contract at all, and is to be determined by operation of law.

Argument has been presented in behalf of the landowners that even if the option contracts could have some relevancy to the question of interest under the condemnation statute, that they have relevancy only to the extent that in condemnation they show an intent to fix the value of the land but not the total compensation therefor. This argument is based on the contention that there is a difference in condemnation between the words "value" and "compensation," and that the word "compensation" includes not only the value found by the trier of the facts but also any additional items required by law, such as the statutory interest. A decision on this problem, in view of the preceding statements of this opinion, is, of course, not necessary, since the Court has already decided that the contracts have no bearing at all on the interest question. However, the Court wishes to point out that it is in agreement with this contention insofar as it believes that if by any stretch of the imagination it can be held that the parties were contracting in contemplation of an adversary proceeding in condemnation,

then they were contracting only to the extent that they were fixing the value of the land in the same manner that Commissioners or a Jury would fix the same, and without any stipulation to cover the entire condemnation proceeding (including matters like interest, which are handled by operation of the Statute). The option contracts, when they speak of the contemplated friendly condemnation to clear title, provide for "a consent verdict fixing the award at the agreed value." They further provide for an immediate deposit of that valuation. Certainly, under the terms of the Statute where the Government agrees to and does deposit an agreed valuation there can be no question of interest. With this in mind the landowners' agreement to a value would have constituted their entire compensation because of the contemporaneous agreement of the Government to instantaneously pay in that value and cut off the right to interest. Nowhere, however, can words be found that show a contemplation by the landowners that they are fixing the possible total compensation that they would take in condemnation regardless of whether the Government, in accordance with its mutually dependent promise, paid in the money subject to the landowners right of user.

It should be noted, before turning to a consideration of the remaining stated issues, that the Court has found, after consideration of the various authorities cited, no binding authority on the previously discussed issues, and feels that in its decision interpreting the Statute under the facts the Court must and is at liberty to arrive at its conclusions independently. All of the authorities cited by the Government to the effect that interest is generally not allowable against the United States, except where contract or statute so provides, are of interest, but actually of no assistance to the Court in the cases at bar.

The only authorities relied on by the plaintiff that the Court has found to even touch upon the propositions here are United States, v. 3.25 Acres of Land in Seneca County, New York, 53 F.Supp. 884, and United States v. Certain Lands in St. Louis, 58 F.Supp. 305, both District Court cases, and the latter decided by Judge Duncan of this District. Although neither is in any way decisive, since their special applicability has been strongly urged, a statement of the Court's views on them is made necessary.

The Court believes that the issues involved in the case before Judge Duncan were not at all the same as those here presented and that that case is so distinguishable as to be of no value as even influential authority. That suit was begun as an ordinary adversary condemnation, but while pending a proposition was made by the owner of the land for settlement of the case. A settlement was agreed upon, accepted, and a judgment rendered for the exact amount of the contract. A motion was filed by the landowners asking for interest from the time of the entry of judgment until payment, on the theory that the Government had unreasonably delayed the payment. Interest was denied by the Court. First, it should be noted that the interest question arose from a demand for interest after entry of judgment, and not before. Second, the contract, in the form of an accepted offer of settlement filed in the case, provided that—

"The consideration hereinabove set forth shall be the amount of the award to be decreed for all damages and compensation by reason of the taking of said lands by such judicial proceedings and we hereby agree that this offer to sell, if accepted, shall, without more, constitute a stipulation, which may be filed in said suit as final and binding evidence of the award to be made in such proceedings and paid into Court for the benefit of all persons entitled thereto."

Thus, when the contract was made, an adversary proceeding was not only in mind but was actually the subject matter of the contract. That contract was a compromise, and that with which they were dealing was well within the minds of the landowners. If they agreed to accept the sum named in the settlement for "all damages and compensation" they would certainly be presumed to include in their computations of what they would take not only the original value of the land but any other claims they might have had to that date against the Government, such as interest (or compensation for the deprivation of use pendente lite). 58 F.Supp. loc.cit. 307, Judge Duncan states:

"The difficulty with defendant's position is that by its own action it removed itself from the provisions of the statute. If this statute were applicable here, defendant would be entitled to interest on $35,000 from the date of taking on June 19, 1939, until the date of the payment, August 14,

1944, but defendant makes no such claim. On the contrary, it bases its claim upon the ground of unreasonable delay in the payment of the amount agreed upon, and for which judgment was entered. It could make no other claim in view of the clear, unambiguous statement in its offer that: '* * * the amount of the award to be decreed for *all damages and compensation* by reason of the taking of said land * * *.' (Emphasis supplied.)

"From this language it must be determined that the defendant's offer was a full and complete offer, not one fixing an amount as of the time of taking, but as of the time of the acceptance and payment."

From the above quotation it can be clearly seen that the real basis of decision was a *finding of fact* that the landowners had voluntarily given up and waived any right they had, and that is just exactly what this Court finds that the landowners in the cases at bar *did not* do. There is no difference to be found in that opinion as to the law, there is simply a factual situation not here present. It should also be noted about that case, that there the landowners did not petition clearly for interest under the statute, but went outside of it relying on alleged unreasonable delay, and, as before noted, it is clearly the law that no matter how arbitrary or unreasonable the delay and how great the hardship imposed, the United States may not be forced to pay interest absent a statute or contract providing therefor. That case was decided on its facts, and the facts in the cases at bar are in no way identical.

The other District Court case, United States v. Certain Lands in Seneca County, New York, supra, may be more in point, it is true, but still is essentially distinguishable from the cases at bar for the same reason as Judge Duncan's opinion. Although the exact fact situation present in that case is not made clear by the opinion, it should be noted that Judge Burke seemed to be of the very definite view that that proceeding was brought completely *within the terms of the option contract,* and not, as in the cases at bar, in derogation and denial of those contracts. The option provided, as here, for friendly condemnation to clear title and although the opinion does not show the Government's motive in bringing the matter to Court, surely it must be presumed, since Judge Burke seems to so imply, that the action was brought within the rights given by the contract. All through the opinion appears the assumption that a proceeding contemplated by the option had occurred and that, therefore, the contract should bind. This is best illustrated by the very words of the Court, 53 F.Supp. loc.cit. 885:

"By agreement of the parties, therefore, it was left to the determination of the United States, through its officers in charge of the matter, to determine, notwithstanding the prior acceptance of the option, whether the title was unsatisfactory for purchase by deed. By express agreement the Government had the right, at its election, to acquire title by condemnation and the church agreed in that event to cooperate to that end and the option price was to constitute conclusive evidence of the true value of the whole property. *When reasonably and fairly exercised, as it appears to have been in the light of the matters set forth in the motion papers, the determination to acquire title by condemnation is not open to question and when resorted to, the express agreement of the parties as to compensation must control.* That agreement was that the option price 'shall be final and conclusive evidence of the true value of the whole of said property and of the proper award to be made in such proceedings'. *The possibility of the Government electing to acquire title by condemnation was not an unforeseen circumstance* and in such event, that there would be some delay in the proceedings, might reasonably have been inferred. The option, however, contained no provision for adding anything to the award to compensate for delay in the payment of compensation. The court may not supply what the parties themselves have failed to include in the agreement." (Emphasis the Court's)

That being the situation, the case can give no assistance where, as here, the Government itself departs from the contract, and makes its performance impossible, and does not exercise any contract right, in the words of Judge Burke, "reasonably and fairly".

Attempts have been made to show guiding principles in the Supreme Court opinion in Muschany v. United States, supra. The Court, however, can find no guidance therefrom and is certain that any language of the Supreme Court that has been used by either of the parties to this suit to justify their conclusions is not pertinent, since

it is only too clear that the Supreme Court of the United States was in no manner addressing itself to the issues now raised by these motions.

Since the submission and briefing of these motions this Court's attention has been directed by defendants to the decision of the United States Circuit Court of Appeals for the Fifth Circuit in United States v. Baugh et al., 149 F.2d 190, decided May 4, 1945. As in Judge Duncan's opinion in United States v. Certain Lands in St. Louis, supra, the suit was commenced as an ordinary condemnation and a stipulation was subsequently filed. The Fifth Circuit held that the landowners were entitled to interest from the filing of the stipulation until deposit. United States v. Baugh et al. is of interest not because it necessarily expressly rules the issues here, but because it contains thought closely allied to this Court's holding. The stipulations there waived hearing before commissioners, consented to decrees vesting title, and agreed that certain sums be adjudged as just compensation. They further read—

"The foregoing stipulation is made to expedite the vesting of title in the plaintiff, the United States of America, and the payment of just compensation for such lands to the owners thereof, and it is the purpose and intent hereof to vest in the Court, without any further proceeding and notice, full authority to close such action by final judgment and to disburse the funds in accordance therewith."

After the filing of these stipulations an eight months' delay ensued before deposit by the Government, although possession had been taken when suit was commenced. Judge Waller discusses the effect of these stipulations, 149 F.2d loc.cit. 192, and the quotation suffices to illustrate the analogous reasoning to this Court's:

"In the present case the Government did not take a deed from the landowner as in an outright purchase, but it acquired title and possession by condemnation. The stipulation merely had the effect of relieving the Government from having to make proof as to what was just compensation and of running the risk of having an amount fixed which might be unsatisfactory. The stipulations eliminated controversies, but otherwise the condemnation suit proceeded to final judgment. *There is no mention in the stipulations that interest was, or was not, included. Just compensation in condemnation cases means just compensation at the time of taking of possession, and when the parties reduced to writing a stipulation fixing just compensation there seems to be no reason to conclude that the landowner impliedly waived any legal right.* In view of the several express waivers made in the writing it will not be presumed to have contained any implied waivers of substantial constitutional rights." (Emphasis the Court's)

Again, the learned Judge says, 149 F.2d loc.cit. 193:

"But the Government failed to pay for seven or eight months thereafter, and there is neither proof nor presumption that the landowners intended to waive interest in the future, particularly for such an indefinite and unreasonable period, and such a waiver cannot be read into the agreement. *Their right to have interest is found in the Constitution and is neither found nor lost in the contract.*

"*The Constitution no more permits the deprivation of money without just compensation than it does the deprivation of the use of land without just compensation.*" (Emphasis the Court's)

Although the facts are different, the case is sound authority for this Court's holding that where a contract fixes the value of the land, the presence of such contract does not affect the matter of interest, which is governed by operation of law.

It is further of interest to note that the Court, in United States v. Baugh, states, 149 F.2d loc.cit. 193:

"The settled law of the land at the time a contract is made is a part of the contract and must be read into it."

This is in direct answer to the plaintiff's underlying argument in the cases at bar that the contract upon which an award is based must provide for interest for it to be allowable. It would seem, however, that the rule is, to the contrary, that a contract is presumably made in view of the law existing (which gives a right to interest), and if this presumption is to be altered the contract must so provide.

The third issue, as above stated, is whether, having decided that the landowners are entitled to interest, they are entitled to interest from the date of actual taking of the land, or from the date of the filing of the declaration of taking in this Court. Here, it is the Court's opinion, that the latter date must govern.

Although it is true that the Government went into possession of these lands sometime prior to filing of these condemnation suits, and withheld the use of the land from the landowners during that intervening period, it is also true that the right in the landowners to interest now is bottomed upon the Statute. This Statute is in derogation of the general rule that no interest is allowable against the sovereign, and strict conformity must, therefore, be required in the application of the exception to these cases. For any loss of the use of their lands after the actual taking but prior to the filing of the declaration of taking, the landowners right lies outside of the condemnation laws and in contract, and they must, therefore, go uncompensated in the same manner that persons dealing with the sovereign in matters other than condemnation receive no interest.

Finally, considering the fourth issue, it has been argued that since the original decrees, entered in the Muschany and the Andrews cases (those appealed to the Supreme Court), provided a judgment for the principal amount of the options plus interest, and since those decrees have been affirmed by the Supreme Court of the United States, that the question of interest is res adjudicata in these cases at least. Additionally, it is argued in this line, that those decrees form influential or binding precedent for all of the other cases and that, further, because of some commitment by counsel for the Government the landowners in the other cases are entitled to the same treatment in all respects as Muschany and Andrews.

■ The question of whether interest is res adjudicata in the Andrews and Muschany cases depends essentially on whether those decrees were, in the form written, affirmed by the Supreme Court, or whether they were made subject to revision or re-entry. The Circuit Court of Appeals, of course, reversed the findings and decrees in those cases, which would have the effect of setting the same aside. The Supreme Court, however, reversed the Court of Appeals and in its mandate ordered that the Muschany and Andrews cases be remanded to the District Court for further proceedings in accordance with its opinion. Although it is true that the Supreme Court did not expressly state that the decrees in the form written were affirmed, it appears that such is the undoubted effect. A reversal of the Court of

Appeals must, of necessity, reinstate the rule of the District Court if nothing more is done. The order of the Supreme Court, remanding to the District Court for further proceedings in accordance with its opinion, can only mean that since the opinion was in accord with the District Court that that latter court should proceed as it had been proceeding prior to appeal. Although the language of the Supreme Court's mandate may not be expressly an affirmance, it cannot be interpreted in any other way, since there are no further proceedings to be had other than execution of the judgments previously entered.

■ The Court recognizes, however, that the issue of interest was not raised before either of the appellate courts, and that neither opinion adjudicates that question. However, that is not the fault of the landowners since the original decrees gave them interest, and those decrees became final unless attacked and set aside on appeal. In view of the Court's holding on the other issues previously discussed in this opinion, a decision of the present issue is, of course, not necessary in order to hold with the landowners. However, the Court feels that so far as the Andrews and Muschany cases are concerned justice requires that the landowners be given the benefit of the Government's failure to seek reversal of the decrees already entered in their favor. The Government, it appears to this Court, participated in an appeal through two courts, alleging error committed by this court. The question of interest was squarely present in the record and the Government could have attacked that during the same appeals. Now, however, having been defeated on the question of the validity of the option contracts the Government seeks to pick another point in the original decrees which it believes erroneous and attack the landowners on that. Such procedure certainly is violative of all tenets of appellate procedure.

■ As for the effect of this upon the other cases in which no decrees were entered, it certainly cannot be said that the opinions of the Supreme Court in the Muschany and Andrews cases form any precedent on the interest question. The issue of the interest awards not having been attacked on appeal, and the opinions of both the Court of Appeals and the Supreme Court being absolutely silent thereon, it would, indeed, be erroneous to say that because the Government neglected to al-

lege an error and obtain a decision on the interest provisions in the Muschany and Andrews decrees that they have thereby made binding or even influential law for other cases.

However, aside from that question, there is the suggested commitment of the Government, which would cause all other cases to follow the exact result of the Andrews and Muschany cases. This Court feels that in all probability good conscience might dictate that all landowners should be given the same treatment as those in the test cases, since they doubtless failed to press their cases to judgment in reliance on an assumption that all cases would result identically. However, the Court further feels that no agreement by the Government intended to cover the question of interest has been shown and is, therefore, not disposed to hold that the Government is bound in that regard. Adequate reasons have been stated elsewhere in this opinion for allowing interest to all landowners, and the Court, therefore, must rule this issue as to all landowners other than Muschany and Andrews against the defendants.

In conclusion, therefore, the Court is of the opinion that the landowners are entitled to entry of judgments which shall include interest upon the deficiencies in their awards from the dates of the filing of the declarations of taking in these cases. The Court is duly appreciative of the position of the Government and the vigilance of its officers in protecting its rights. Great skill and diligence has been exercised by those agents, and the Court believes that their efforts were certainly not unreasonable in light of the contrary opinions arrived at by the various jurists to whom the issues have so far been presented. However, the Court feels that the landowners, within the spirit of the Fifth Amendment of the Constitution of the United States, are entitled to a just compensation for their lands, and that that includes the right to receive as additional compensation the interest granted by the Statute for their loss of the use of their land, or the use of their money, during the long period when the officers of the Government were attempting to diminish the amounts to be paid to them. As already stated, it appears to this Court that these landowners so clearly come within the class intended by Congress to be benefited by the Statute that, although the Government's earnest attempts to obtain reversals were in the best of faith, the landowners should not be made to suffer because of those attempts.

Wherefore, the Court directs that in accordance with this opinion drafts of judgments carrying interest on the undeposited deficiencies from the filing of declarations of taking be presented in all of the above styled cases, except the Muschany and Andrews cases in which decrees have already been entered, and that, also, orders ruling the numerous motions and countermotions be supplied. Upon submission for approval and settlement of the same appropriate orders and decrees will be entered.