**Richard A. MARKEY, John B. Lopetrone, and Gary L. Stewart, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Garnet R. COLLIER, and Anton J. Grgich, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Nos. 91–1446C, 91–1544C.**

United States Court of Federal Claims.

Feb. 5, 1993.

---

Richard G. Haggart, Anchorage, AK, atty. of record, for plaintiffs; Paul J. O'Reilly, Washington, DC, of counsel.

Kathryn Bleeker, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, DC, with whom were David M. Cohen, and Stuart M. Gerson, Asst. Atty. Gen., attys. of record, for defendant; Major Mike Calopy, Dept. of the Air Force, of counsel.

## OPINION

HORN, Judge.

These related cases are before the court on defendant's motions to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).[1] In support of its motions, the defendant asserts that this court lacks the requisite jurisdiction to entertain plaintiffs' claims for interest on the backpay awards ordered by the Equal Employment Opportunity Commission (EEOC), pursuant to the Rehabilitation Act. (*See* 29 U.S.C. § 794 (1988).) Plaintiffs, in their complaints, however, attempt to rely on the Back Pay Act, 5 U.S.C. § 5596 (1988), and regulations promulgated thereunder at 29 C.F.R. § 550.801, and following sections, to confer jurisdiction upon this court to award interest on the EEOC awards, pursuant to 28 U.S.C. § 1491 (1988).

The backpay awards on which the plaintiffs seek interest resulted from the retroactive reinstatement of plaintiffs following an administrative determination by the EEOC that plaintiffs had suffered discrimination pursuant to the Rehabilitation Act. The EEOC initially awarded interest to plaintiffs Markey, Lopetrone and Stewart on their backpay awards, but, upon recon-

sideration, refused to include interest as part of the award. Plaintiffs Collier and Grgich, however, were denied interest on their original backpay awards by the EEOC. Each of the plaintiffs seek relief in this court in the amount of interest allegedly due on the backpay awards ordered by the EEOC. Plaintiffs, Markey, Lopetrone and Stewart, filed a consolidated complaint with this court. Shortly thereafter, plaintiffs Collier and Grgich filed a separate consolidated complaint. After a thorough review of the filings in this case, and after hearing oral argument, the court concludes that it lacks jurisdiction to consider plaintiffs' claims. Accordingly, the defendant's motions to dismiss the complaints of plaintiffs Richard A. Markey, John B. Lopetrone, Gary L. Stewart, Garnet R. Collier, and Anton J. Grgich are, hereby, GRANTED.

## FACTS

There is no disagreement between the parties regarding the facts of this case. Nor is there any substantial difference in the relevant facts presented by each of the five plaintiffs now before the court. In fact, at the oral argument, plaintiffs' attorney acknowledged the similarity of the issues in the five cases by introducing himself to the court as "Richard Haggart, on behalf of the plaintiffs in the consolidated cases."[2]

Plaintiffs, Richard Markey, John Lopetrone, Gary Stewart, Garnet Collier, and Anton Grgich, applied for federal civilian positions at Elmendorf Air Force Base in Anchorage, Alaska. Plaintiffs submitted their applications for employment as follows: Garnet Collier and Anton Grgich in March, 1984; Richard Markey in Novem-

---

1. Following the enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court are unaffected by the legislation, other than with respect to the name change of the court

and, therefore, the name change of the rules. However, General Order 33 also indicated that if there is a conflict between the new statute and the rules, the statute will control.

2. Although the cases were never formally consolidated, the five cases are closely related factually and raise the same issues of law for the court's consideration. Therefore, the court decides all five cases in the instant Opinion.

ber, 1983; and John Lopetrone in August, 1984. The record does not reflect the precise date on which Gary Stewart submitted an application, although the record does indicate that his application was denied in November 1983. The Department of the Air Force had previously identified the positions for which the plaintiffs applied as hazardous noise positions and, therefore, required applicants for these positions to meet certain hearing requirements.[3] Although plaintiffs were interviewed and selected for the positions, plaintiffs did not meet those hearing requirements, and the agency refused to hire them.

The plaintiffs each filed administrative complaints with the Air Force, alleging that they had been discriminated against on the basis of a physical handicap (hearing impairment), in violation of section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, et seq. Following an investigation and a hearing on each complaint, the agency found no discrimination. Plaintiffs, therefore, each initiated timely appeals to the Equal Employment Opportunity Commission (EEOC) from the final decision of the Air Force.

The EEOC reversed the Air Force's decisions, finding that the agency had discriminated against the plaintiffs based on their handicaps in violation of 29 U.S.C. § 791. Specifically, the EEOC found that each plaintiff met the definition of a qualified handicapped person, 29 C.F.R. §§ 1613.-702(a)(2), 1613.702(a)(3) and 1613.702(f), capable of safely performing the duties of the positions for which each had applied without reasonable accommodation. The EEOC ordered the agency to appoint each plaintiff retroactively to the position applied for (plaintiff Markey—Equipment Specialist (Electronics), plaintiff Lopetrone—Carpenter, plaintiff Stewart—Heavy Mobile Equipment Mechanic, plaintiff Collier—Engineering Equipment Operator, and plaintiff Grgich—Engineering Equipment Operator) from the date the

plaintiffs would have entered on duty. The EEOC further ordered payment to each plaintiff of backpay and other benefits. In the cases of plaintiffs Markey, Lopetrone and Stewart, the EEOC ordered: "The agency is directed to award each appellant backpay, interest, and other benefits in accordance with 29 C.F.R. § 1613.271." In the cases of plaintiffs Collier and Grgich, the EEOC Order directed that: "[t]he agency is ORDERED to issue checks to the appellants for the appropriate amount of backpay and other benefits, under pertinent Office of Personnel Management Regulations, ..." The Collier and Grgich Order also stated: "[r]easonable attorneys fees shall be awarded in accordance with 29 C.F.R. 1613.271(d)." The EEOC did not, however, address the issue of interest in the Collier & Grgich Opinion. Following the EEOC's Order of May 16, 1991, the agency retroactively appointed the plaintiffs to the positions for which they had been selected, plaintiff Markey as of November 29, 1983, plaintiff Lopetrone as of August 29, 1984, plaintiff Stewart as of November 1, 1983, plaintiff Collier as of April 2, 1984 and plaintiff Grgich as of May 11, 1984.

Although in its initial disposition of the appeals of John Lopetrone, Richard Markey and Gary Stewart, the EEOC awarded interest in addition to backpay, upon reconsideration, the full Commission concluded in its Decision on Reconsideration regarding plaintiffs Markey, Lopetrone and Stewart, that the previous decision, although correct in other respects, was in error regarding the previous EEOC Order to pay interest. On reconsideration, the EEOC wrote:

Citing *Library of Congress v. Shaw*, 478 U.S. 310 [, 106 S.Ct. 2957, 92 L.Ed.2d 250] (1986), the agency argues that the Commission's previous decision incorrectly ordered the agency to pay interest on the backpay awards. In 1985, the Commission adopted a policy statement on

---

**3.** Since 1946, the Air Force has operated a Hearing Conservation Program (HCP) to protect employees from the harmful effects of hazardous noise. Air Force Regulation (AFR) 161–35 at 3, 1 (1982). Pursuant to this program, the agency must identify hazardous noise areas, monitor employees exposed to hazardous noise, and limit noise exposure to permissible levels. AFR 161–35 at 7, 12.

remedies in individual cases and, in 1987, incorporated that policy statement into its federal sector regulations as Appendix A to 29 C.F.R. Part 1613, 52 Fed.Reg. 41,920 (Oct 30, 1987), codified at 29 C.F.R. Part 1613, Appendix A (1989). In the preamble to the regulations, 52 Fed. Reg. at 41,921, the Commission recognized that payments of interest by federal government agencies could not be made unless there has been a waiver of sovereign immunity. The Commission subsequently found that the 1987 amendments to the Back Pay Act constituted such a waiver. The Back Pay Act, 5 U.S.C. § 5596, was amended on December 27, 1987, to provide for the payment of interest on backpay awards 'with respect to any employee found, in a final judgment entered or in a final decision otherwise rendered on or after December 22, 1987, to have been the subject of an unjustified or unwarranted personnel action.' Accordingly, the Commission issued decisions awarding interest on backpay, finding that the 1987 amendments to the Back Pay Act waived sovereign immunity for the payment of interest. *E.g., Hall v. Lyng,* EEOC Request No. 05880912 (Dec. 29, 1988). An opinion from the office of Legal Counsel at the Department of Justice, however, indicates the Back Pay Act of 1969, as amended, 5 U.S.C. § 5596, does not serve as a waiver of sovereign immunity with respect to federal agencies. The Commission therefore finds that, in the absence of a reversal of this opinion or a Congressional waiver of sovereign immunity or a definitive judicial interpretation specifically providing for interest on backpay at the administrative level, interest in backpay will not be awarded to federal applicants or employees who prevail in discrimination cases. Accordingly, we reopen the previous decision to the extent that it ordered the agency to

pay interest on the backpay awarded to Lopetrone, Markey, and Stewart. We hereby modify Part C of the Commission's Order in the previous decision to read as follows:

> The agency is directed to award each appellant backpay and other benefits in accordance with 29 C.F.R. § 1613.- 271.

On September 19, 1991 and October 25, 1991, plaintiffs filed their respective complaints in this court, seeking an award of interest due on the backpay awarded by the EEOC.[4] Plaintiffs assert that this court has the jurisdiction to entertain their claims pursuant to the Back Pay Act, 5 U.S.C. § 5596 (1988), 29 C.F.R. § 550.801 (1989),[5] and the Tucker Act, 28 U.S.C. § 1491 (1988). The defendant, however, argues, in its motions to dismiss, that this court lacks the requisite jurisdiction to entertain plaintiffs' claims. In their responses, plaintiffs maintain that the agency's failure to pay them during the period from 1984 to 1991 violated 5 U.S.C. § 5504 (1988) and/or 5 U.S.C. § 5505 (1988), that these statutes should be fairly construed as money-mandating statutes, and that the plaintiffs, therefore, are "jurisdictionally entitled" to bring this action under the Tucker Act, 28 U.S.C. § 1491, and to seek the remedies of the Back Pay Act, 5 U.S.C. § 5596.

## DISCUSSION

A motion to dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), based on a challenge to the jurisdiction of the court, requires that the court reach its decision based on the evidence presented by the parties. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, the general standards for weighing evidence presented in a

---

**4.** Plaintiffs Markey, Lopetrone and Stewart filed their consolidated complaint on September 19, 1991. Plaintiffs Collier and Grgich filed a separate consolidated complaint on October 15, 1991.

**5.** Plaintiffs' complaints incorrectly cite to the regulations at 29 C.F.R. § 550.801. The regulations implementing the Back Pay Act are found at 5 C.F.R. § 550.801. The EEOC's regulations pertaining to backpay are found at 29 C.F.R. § 1613.271.

complaint when deciding a motion to dismiss, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter, or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989). The court must accept as true any undisputed allegations of fact made by the plaintiff. In evaluating a motion to dismiss for failure to state a claim, the court must presume all factual allegations in the complaint are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). *See also Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. A motion to dismiss should not be granted by the court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Furthermore, in a determination of the validity of the motion to dismiss "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A James Wm. Moore & Jo Desha Lucas, *Moore's Federal Practice*, ¶ 12.07[2.–5] (2d ed. 1992).

■ The burden is on the plaintiff to establish jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Pasco Enters. v. United States*, 13 Cl.Ct. 302, 305 (1987); *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986). In the instant cases, although the facts are not in dispute, the key issue is whether plaintiffs can cite to valid statutory authority by which to vest jurisdiction in this court sufficient to entertain their claims for interest on their EEOC mandated backpay awards.

■ Congress has defined the jurisdiction of the United States Court of Federal Claims, under the Tucker Act, 28 U.S.C. § 1491 (1988), to include those claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Act "is itself a jurisdictional statute; it does not create a substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The jurisdiction of this court under the Tucker Act has been defined as follows:

> But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.

*Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). Therefore, a plaintiff must look beyond the Tucker Act and also plead a money mandating predicate upon which to base jurisdiction. *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983); *Ashgar v. United States*, 23 Cl.Ct. 226, 230–31 (1991); *Westech Corp. v. United States*, 20 Cl.Ct. 745,

748 (1990); *Millard v. United States*, 14 Cl.Ct. 55, 58 (1987).

█ Plaintiffs, in their complaints, assert that the Back Pay Act, 5 U.S.C. § 5596 (1988), confers such jurisdiction on this court. The United States Court of Appeals for the Federal Circuit, however, explicitly has held otherwise.

The overall answer is that the Back Pay Act "is merely derivative in application; it is not itself a jurisdictional statute. Unless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable.

*Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed.Cir.1984) (citations omitted). *See also United States v. Connolly*, 716 F.2d at 887. Therefore, unless some other provision of law commands payment of money to the employee for the "unjustified or unwarranted personnel action," this court may not assert its jurisdiction. *Spagnola v. Stockman*, 732 F.2d at 912. *See Connolly*, 716 F.2d at 887; *Montalvo v. United States*, 231 Ct.Cl. 980, 982 (1982); 5 U.S.C. § 5596(b)(1) (1988). Indeed, binding precedent establishes that the Back Pay Act does not confer jurisdiction on this court to entertain suits for civilian backpay cases. Therefore, it is also clear that this court may not accept for review a case which requests only interest on such a civilian backpay award.

█ Plaintiffs, in their responses to defendant's motions to dismiss, further contend that 5 U.S.C. § 5504 [6] should be interpreted as a money mandating predicate sufficient to vest jurisdiction in this court. [7] In support, plaintiffs contend that the stat-

utory provisions included in 5 U.S.C. §§ 5301–5385, establishing the rate of pay for federal employment, and in 5 U.S.C. § 5504, establishing the timing of pay for federal employment, provide for the payment of monies to a federal employee. Because plaintiffs in the instant cases were ordered to be retroactively appointed in the Air Force, plaintiffs argue they are entitled to interest on the backpay at issue and to bring their causes of action in this court.

Plaintiffs reason that as retroactively appointed employees of the Department of the Air Force, they are "employee[s] in or under an Executive agency" pursuant to 5 U.S.C. § 5504 and/or § 5505, and are entitled to established pay rates and pay periods as set forth in those sections. They argue, therefore, that they possess a substantive right to payment of interest on the backpay awarded by the EEOC arising out of their rights pursuant to 5 U.S.C. § 5504. Plaintiffs further contend that these "statutory pay periods" are mandatory and that nothing in the statutory or regulatory material, referring to 5 C.F.R. Part 550, *et seq.*, provides flexibility to the employing agency in this regard. Finally, plaintiffs assert that since their failure to receive pay violates 5 U.S.C. § 5504(a), the plaintiffs may seek money damages in this court.

█ A money mandating statute sufficient to perfect jurisdiction must contain an express waiver of sovereign immunity. Therefore, before addressing the merits of plaintiff's claims, the court must determine whether the Congress has expressly waived its sovereign immunity and consented to a cause of action against the United States, as claimed by plaintiffs. A waiver of sovereign immunity must be explicit; it

6. Plaintiffs admit that they did not specifically reference 5 U.S.C. § 5504 in their complaints. Each plaintiff maintained, however, that his claim for backpay, interest, and other damages, based on his federal employment since 1983 and 1984, respectively, should be sufficient under notice pleading principles. Although this basis for jurisdiction is not set forth in the complaints and is introduced in plaintiffs' responses to defendant's motions to dismiss, the court nonetheless addresses and disposes of this argument in the interests of judicial economy, rather than allowing an amendment of the complaints first, since the court finds that this allegation is also

insufficient grounds to allow the plaintiffs to recover.

7. Plaintiffs argue that their pay periods are controlled by 5 U.S.C. § 5504, and/or 5 U.S.C. § 5505. Plaintiffs argue later in their briefs, however, that plaintiffs' pay periods are controlled by 5 U.S.C. § 5504, but that "[t]he jurisdictional analysis of the statutes ... which govern periodic wage requirements for two different categories of federal employees should not differ."

cannot be implied. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). *See also Office of Personnel Management v. Richmond,* 496 U.S. 414, 423, 110 S.Ct. 2465, 2470, 110 L.Ed.2d 387 (1990).

With regard to a claim for interest against the United States, the sovereign cannot pay interest unless consent to pay has been made explicit by a waiver of sovereign immunity as a result of an act of the legislature or by a lawful contract of its executive officers. *Library of Congress v. Shaw,* 478 U.S. 310, 314–15, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986); *United States v. Alcea Band of Tillamooks,* 341 U.S. 48, 49, 71 S.Ct. 552, 552, 95 L.Ed. 738 (1951); *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 603, 91 L.Ed. 577 (1947); *United States v. North Carolina,* 136 U.S. 211, 216, 10 S.Ct. 920, 921, 34 L.Ed. 336 (1890); *Angarica v. Bayard,* 127 U.S. 251, 260, 8 S.Ct. 1156, 1160, 32 L.Ed. 159 (1888); *Tillson v. United States,* 100 (10 Otto) U.S. 43, 47, 25 L.Ed. 543 (1879); *see also United States v. North Am. Transp. & Trading Co.,* 253 U.S. 330, 336, 40 S.Ct. 518, 521, 64 L.Ed. 935 (1920); *Zumerling v. Marsh,* 783 F.2d 1032, 1034 (Fed.Cir.1986); *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1383 (Fed.Cir.1983); *Pender Peanut Corp. v. United States,* 21 Cl.Ct. 95, 96 (1990). Furthermore, in analyzing whether Congress has waived the immunity of the United States, courts must construe such language strictly in favor of the government. *Library of Congress v. Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963; *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). As stated by the Supreme Court:

Thus, there can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 603, 91 L.Ed. 577 (1947) (citations omitted).

The Supreme Court succinctly summarized the historical background and existing state of the law in *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, which because of its direct relevance to the case at bar is quoted at length, as follows:

In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim. C. McCormick, Law of Damages § 50, p. 205 (1935).

*Library of Congress v. Shaw,* 478 U.S. at 314, 106 S.Ct. at 2961. Furthermore, according to the Court:

[p]rejudgment interest, however, is considered as damages, not a component of 'costs.' See 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2664, pp. 159–160 (2d ed. 1983); 2 A. Sedgwick & G. Van Nest, Sedgwick on Damages 157–158 (7th ed. 1880). Indeed, the term 'costs' has never been understood to include any interest component. See 28 U.S.C. § 1920 see also Wright, Miller, & Kane, *supra,* §§ 2666 and 2670. A statute allowing costs, and within that category, attorney's fees, does not provide the clear affirmative intent of Congress to waive the sovereign's immunity.

*Id.* 478 U.S. at 321, 106 S.Ct. at 2965. Moreover, the Court indicated that:

Nor do we find the requisite waiver of immunity from interest in the statutory requirement of awarding 'reasonable' attorney's fees. There is no basis for reading the term 'reasonable' as the embodi-

ment of a specific congressional choice to include interest as a component of attorney's fees, particularly where the legislative history is silent. The Court consistently has refused to impute an intent to waive immunity from interest into the ambiguous use of a particular word or phrase in a statute.

*Id.* at 320, 106 S.Ct. at 2964. In addition, the Court described the lengthy history of the no interest rule against the government, absent a waiver of sovereign immunity, and wrote:

> This basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress. See, *e.g., United States ex rel. Angarica v. Bayard,* 127 U.S. 251, 260 [, 8 S.Ct. 1156, 1160, 32 L.Ed. 159] (1888) ('The case, therefore, falls within the well-settled principle, that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect'). The purpose of the rule is to permit the Government to 'occupy an apparently favored position,' *United States v. Verdier,* 164 U.S. 213, 219 [, 17 S.Ct. 42, 44, 41 L.Ed. 407] (1896), by protecting it from claims for interest that would prevail against private parties. See 4 Op.Atty.Gen. 136, 137 (1842).

*Id.* 478 U.S. at 315–16, 106 S.Ct. at 2961–62. The Supreme Court also specifically addressed the issue of how this court should interpret questions regarding an award of interest against the sovereign when it stated:

> In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute. Court of Claims Act, § 7, 12 Stat. 766 (current version at 28 U.S.C. § 2516(a)). Although the Act, by its terms, addresses only those cases brought in the Court of Claims, this Court repeatedly has made clear that the Act merely codifies the traditional legal rule regarding the immunity of the Unit-

ed States from interest. See, *e.g., Tillson v. United States,* 100 U.S. [ (10 Otto) ] 43, 47 [, 25 L.Ed. 543] (1879); *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 658 [, 67 S.Ct. 601, 603, 91 L.Ed. 577] (1947); *United States v. Tillamooks,* 341 U.S. 48, 49 [, 71 S.Ct. 552, 552, 95 L.Ed. 738] (1951). In cases not in the Court of Claims, this Court has reaffirmed the notion: Apart from constitutional requirements, in the absence of specific provision by contract or statute, or 'express consent ... by Congress,' interest does not run on a claim against the United States. *United States v. Louisiana,* 446 U.S. 253, 264–265 [, 100 S.Ct. 1618, 1625–26, 64 L.Ed.2d 196] (1980), quoting *Smyth v. United States,* 302 U.S. 329, 353 [, 58 S.Ct. 248, 252, 82 L.Ed. 294] (1937). See *United States v. Sioux Nation of Indians,* 448 U.S. 371, 387, n. 17 [, 100 S.Ct. 2716, 2726, n. 17, 65 L.Ed.2d 844] (1980).

*Id.* 478 U.S. at 317, 106 S.Ct. at 2962.

This analytical framework was adopted by the United States Court of Appeals for the Federal Circuit which also held:

> It is axiomatic that '[t]he sovereign's consent to be sued cannot be implied but must be unequivocally expressed.' *Kania v. United States,* 650 F.2d 264, 269, 227 Ct.Cl. 458, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *see also United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Thayer–West Point Hotel,* 329 U.S. 585, 586, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947). Therefore, '[a]n allowance of interest on a claim against the United States, absent constitutional requirements, requires an *explicit* waiver of sovereign immunity by Congress. Such express consent to the payment of interest must be found in either a special statute or an express contractual provision. The intent by Congress to permit the recovery of interest cannot be implied,' and must be strictly construed. *Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1383 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983) (emphasis in origi-

nal); *see also Brookfield Construction Co. v. United States*, 661 F.2d 159, 165, 228 Ct.Cl. 551 (1981).

*Zumerling v. Marsh*, 783 F.2d at 1034.

The clear language of 5 U.S.C. § 5504 and § 5505 negates plaintiffs' claim that either section confers jurisdiction to entertain the instant action in this court.[8] Indeed, neither 5 U.S.C. § 5504 nor § 5505 mandates payment of interest by the Government on a backpay award. These sections deal only with the computation of an employees' pay, according either to biweekly or monthly pay periods. 5 U.S.C. §§ 5504, 5505. Moreover, both sections

5504 and 5505 fall under the chapter heading in the statute "Pay Administration," within the subchapter titled "General Provisions." The language of the two statutory sections demonstrates that these statutes relate to the computation of pay, rather than to entitlement to be paid, much less to be paid interest on any such amount.

■ This court also notes that the EEOC properly determined under 29 U.S.C. §§ 791–794 (1988), and the regulations promulgated thereunder, 29 C.F.R. § 1613.806 (1988), that interest should not be awarded on plaintiffs' backpay awards. The statutory framework relied on by the EEOC in

---

8. 5 U.S.C. §§ 5504–5505, the provisions under which plaintiff asserts jurisdiction in this court, provide in pertinent part:

**§ 5504. Biweekly pay periods; computation of pay**

(a) The pay period for an employee covers two administrative workweeks. For the purpose of this subsection, "employee" means—

(1) an employee in or under an Executive agency;

(2) an employee in or under the Office of the architect of the Capitol, the Botanic garden, and the Library of Congress, for whom a basic administrative workweek is established under section 6101(a)(5) of this title; and

(3) an individual employed by the government of the District of Columbia;

but does not include—

(A) an employee on the Isthmus of Panama in the service of the Panama Canal Commission; or

(B) an employee or individual excluded from the definition of employee in section 5541(2) of this title other than an employee or individual excluded by section 5541(2)(xvi) of this title.

(b) When, in the case of an employee, it is necessary for computations of pay under this subsection to convert an annual rate of basic pay to a basic hourly, daily, weekly, or biweekly rate, the following rules govern:

(1) To derive an hourly rate, divide the annual rate by 2,087.

(2) To derive a daily rate, multiply the hourly rate by the number of daily hours of service required.

(3) To derive a weekly or biweekly rate, multiply the hourly rate by 40 or 80 as the case may be.

Rates are computed to the nearest cent, counting one-half and over as a whole cent. For the purpose of this subsection "employee" means—

(A) an employee in or under an Executive agency;

(B) an employee in or under the judicial branch;

(C) an employee in or under the Office of the Architect of the Capitol, the Botanic Garden and the Library of Congress, for whom a basic administrative workweek is established under section 6101(a)(5) of this title; and

(D) an individual employed by the government of the District of Columbia;

but does not include an employee or individual excluded from the definition of employee in section 5541(2) of this title other than an employee or individual excluded by section 5541(2)(xvi) of this title.

(c) The Office of Personnel Management may prescribe regulations, subject to the approval of the President, necessary for the administration of this section insofar as this section affects employees in or under an Executive agency.

\*   \*   \*   \*   \*   \*

**§ 5505. Monthly pay periods; computation of pay**

The pay period for an individual in the service of the United States whose pay is monthly or annual covers one calendar month, and the following rules for division of time and computation of pay for services performed govern:

(1) A month's pay is one-twelfth of a year's pay.

(2) A day's pay is one-thirtieth of a month's pay.

(3) The 31st day of a calendar month is ignored in computing pay, except that one day's pay is forfeited for one day's unauthorized absence on the 31st day of a calendar month.

(4) For each day of the month elapsing before entering the service, one day's pay is deducted from the first month's pay of the individual.

This section does not apply to an employee whose pay is computed under section 5504(b) of this title.

5 U.S.C. §§ 5504–5505 (1988).

its decision to award backpay does not mandate payment of interest. 29 U.S.C. § 794 (1988) provides in pertinent part:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the Amendments to this Section made by the Rehabilitation, Comprehensive Services, & Developmental Disabilities Act of 1978.

The statutory mandate prohibiting discrimination against the handicapped also sets forth the remedies available to an individual found to have suffered discrimination in violation of section 794 as follows:

### § 794a. Remedies and attorney fees

(a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefore or other appropriate relief in order to achieve an equitable and appropriate remedy.

(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d *et seq.*] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Nowhere in these provisions is there mention of the possibility of awarding interest as part of a remedy for violation of section 794.

The statutory provisions incorporated by reference into the text of section 794a also set forth no provision for an award of interest by the government on an amount owed, pursuant to an order of backpay under the Act. Section 794a refers the reader to a number of sections as sources of additional remedies and rights: section 717 of the Civil Rights Act of 1964 as codified at 42 U.S.C. section 2000e–16 and subsections 2000e–5(f) through 2000e–5(k) of the same title. Specifically, subsection 2000e–5(g) sets forth, in pertinent part, the remedies available under title VII of the of the Civil Rights Act:

(g) **Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders**

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

Therefore, it is clear that the statutory framework, pursuant to which the EEOC issued its decision, makes no mention of interest as a necessary element of full recovery by plaintiffs.

Moreover, the Supreme Court in *Library of Congress v. Shaw,* the case on which the EEOC so heavily relied when it reversed its initial award of interest to plaintiffs Markey, Lopetrone and Stewart, noted that:

Title VII's provision making the United States liable 'the same as a private person' waives the Government's immunity from attorney's fees, but not interest. The statute, as well as its legislative history, contains no reference to interest. This congressional silence does not permit us to read the provision as the requisite waiver of the Government's immunity with respect to interest.

\*　　\*　　\*　　\*　　\*　　\*

That § 706(k) already contained language equating the liability of the United States for attorney's fees to that of a private person does not represent the requisite affirmative congressional choice to waive the no-interest rule; see also n. 5, *supra.*

*Library of Congress v. Shaw,* 478 U.S. at 319, 106 S.Ct. at 2964.

The only language which might be cited to support an argument that payment of interest is appropriate as part of an award of backpay, although not cited to by plaintiffs, can be found in Appendix A to 29 C.F.R. Part 1613 (October 30, 1987). Titled "Policy Statement on Remedies and Relief for Individual Cases of Unlawful Discrimination," Appendix A, is printed in the C.F.R. immediately following 29 C.F.R. section 1613.806. This statement of policy sets forth both the general purpose and a suggested model for calculating awards of backpay for victims of handicap discrimination:

The Commission believes that a full remedy must be sought in each case where a District Director concludes the case has merit and has, or is prepared to, issue a letter of violation or a letter finding reasonable cause to believe that one of the statutes the agency enforces has been violated. The remedy must be fashioned from the wide range of remedial measures available to this law enforcement agency which has broad authority under the statutes it enforces to seek appropri-

ate forms of legal and equitable relief. The remedy must also be tailored, where possible, to cure the specific situation which gave rise to the violation of the statute involved.

Accordingly, all remedies and relief sought in court, agreed upon in conciliation or ordered in Federal sector decisions *should* contain the following elements *in appropriate circumstances:* [Emphasis added.]

Paragraph (4) of section 1613.806 states:

(4) Backpay

Each identified victim of discrimination is entitled to be made whole for any loss of earnings the discriminatee may have suffered by reason of the discrimination. Each individual discriminatee must receive a sum of money equal to what would have been earned by the discriminatee in the employment lost through discrimination ("Gross Backpay") less what was actually earned from other employment during the period after normal expenses incurred in seeking and holding the interim employment have been deducted ("Net Interim Earnings"). The difference between Gross Backpay and Net Interim Earnings is Net Backpay Due. *Interest should be computed on all Net Backpay Due.* Net Backpay accrues from the date of discrimination, except where the statutes limit the recovery, until the discrimination against the individual has been remedied.

Gross Backpay includes all forms of compensation such as wages, bonuses, vacation pay, and all other elements of reimbursement and fringe benefits such as pension and health insurance. Gross Backpay must also reflect fluctuations in working time, overtime rates, changing rates of pay, transfers, promotions, and other perquisites of employment that the discriminatee would have enjoyed but for the discrimination. [Emphasis added.]

Although Appendix A, by its terms, appears to accord to the EEOC the discretion to award interest on backpay "in appropriate circumstances," payment of interest is not made mandatory and, more important, is not contemplated or authorized in the

applicable statutory language. *See* 29 U.S.C. §§ 794, 794a; 42 U.S.C. §§ 2000e–5f—2000e–5k, 2000e–16; 29 C.F.R. Part 1613.

Plaintiffs acknowledge that "the pay-period statutes have not been the subject of extensive judicial interpretation...." Unfortunately, those few cases cited by plaintiffs in support of their assertion of jurisdiction are unconvincing.[9] Plaintiffs cite *Ainsworth v. United States*, 185 Ct.Cl. 110, 399 F.2d 176 (1968), for the proposition that this court is "an appropriate authority" for awarding relief under the Back Pay Act. The decision by the United States Court of Claims in *Ainsworth* is no longer good law, as it has been superseded by the enactment of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 111 (codified, as amended, in scattered sections of 5 U.S.C. (1988)). Moreover, lest there by any ambiguity as to any remnant of *Ainsworth* under the statutory framework of the CSRA, the United States Supreme Court has made it clear that the CSRA sets forth the exclusive avenue for civil servants affected by adverse personnel actions. *United States v. Fausto*, 484 U.S. 439, 455, 108 S.Ct. 668, 677, 98 L.Ed.2d 830, *reh'g denied*, 485 U.S. 972, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988). In *Fausto*, the Supreme Court wrote:

> ... under the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination.... Now, as previously, if an employee is found by 'an appropriate authority' to have undergone an unwarranted personnel action a suit for backpay will lie. Post–CSRA, such an authority would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination.

> \* \* \* \* \* \*

> The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act.

*Id.* at 454–55, 108 S.Ct. at 677.

The United States Court of Appeals for the Federal Circuit has followed the guidance in *United States v. Fausto*, holding that "the CSRA's 'integrated scheme of administrative and judicial review' barred review by the Claims Court of personnel decisions giving rise to claims for back pay. Significantly, the court thereby foreclosed an avenue to the courts that pre-CSRA had

---

**9.** In support of their assertion of jurisdiction, plaintiffs cite to *Lincoln v. United States*, 418 F.Supp. 1094 (N.D.Cal.1976), a fifth amendment takings case from the Northern District of California, for the proposition that Congress contemplated a specified pay period for federal employees, in sections 5504 and 5505, and that, therefore, "[v]iolation of that Congressional specification entitles Plaintiffs to their relief and the jurisdiction of this court." Not only is *Lincoln* not binding on this court, but it deals with a constitutional issue not present in the instant case. The *Lincoln* case however, does not refer to plaintiffs' entitlement to federal pay. In fact, nowhere does the court even mention any form of the word "entitle." Furthermore, the plaintiff in *Lincoln* claimed that his Fifth Amendment rights were violated when the Government failed to pay him immediately as his pay was earned. *Lincoln*, 418 F.Supp. at 1095. *Lincoln* established only that Congress, in sections 5504 and 5505, had the power to provide for biweekly payment of wages and salaries to employees. *Lincoln*, 418 F.Supp. at 1095. The court then reasoned that plaintiff, therefore, had no constitutional basis under the Fifth Amendment for attacking the biweekly payment structure established by Congress in sections 5504 and 5505. *Id.*

Plaintiffs assert next that *Jacobs v. United States*, 41 Ct.Cl. 452 (1906), provides further support for their argument that claims arising under 5 U.S.C. sections 5504 and 5505 confer jurisdiction on this court. *Jacobs* likewise fails to provide authority for plaintiff's argument that sections 5504 and 5505 are jurisdictional in the Claims Court. Indeed, *Jacobs* does not involve a claim for interest and certainly provides plaintiffs with no assistance towards persuading this court that it should construe §§ 5504–05 as containing the explicit waiver of sovereign immunity which must be present in order for this court to assert its jurisdiction and to award interest.

been open to federal employees by statute." *Carter v. Gibbs,* 909 F.2d 1452, 1456 (Fed.Cir.), *cert. denied sub nom, Carter v. Goldberg,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), (quoting and citing *United States v. Fausto,* 484 U.S. 439, 451, 108 S.Ct. 668, 675, 98 L.Ed.2d 830 (1988)). The United States Court of Appeals for the Federal Circuit clearly has held that the United States Claims Court is not an appropriate authority to determine whether a civilian employee suspension and dismissal was proper. *Carr v. United States,* 864 F.2d 144, 146–47 (Fed.Cir.1989).

In light of *Fausto* and the cases which have followed, this court must decline to extend its jurisdiction to cases such as the one at bar. As stated in a recent case in the United States Claims Court, "... the CSRA envisions appeals of adverse personnel decisions through the MSPB to the CAFC or, in discrimination cases, to the district court." *Mobin v. United States,* 22 Cl.Ct. 331, 335 (1991).

Stated in slightly different terms, the United States Court of Appeals for the Federal Circuit has written:

> [w]here an employee is provided a means of redress under CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court.... Since McClary could have taken his claim to the Board, he did not have a right of action on that same claim in the Claims Court and that court properly held that it lacked jurisdiction.

*McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985) (citations omitted). Thus, in light of the passage of the CSRA and the decision of the Supreme Court in *Fausto,* plaintiffs' citation to *Ainsworth v. United States* provides this court with no basis for asserting jurisdiction over the instant claims.

## CONCLUSION

After a careful review of all the submissions and arguments presented by each of the parties, the court, hereby GRANTS the defendant's motions to dismiss. The Clerk of the Court is directed to enter judgment in accordance with this decision and to dismiss the complaints filed by plaintiffs Markey, Lopetrone, Stewart, Collier, and Grgich.

IT IS SO ORDERED.

